## COQUILLARD *v.* COQUILLARD ET AL.

[No. 9,033. Filed June 27, 1916.]

1. WILLS.—*Construction.—Contingent* Remainders.—Where a testator's will devised lands owned in fee to the widow for life and then to two sons as tenants in common for life, the remainder in fee going to such of the son's children as might survive, the estate limited to the unborn children of either son of the testator was not a vested but a contingent remainder in fee, which would vest on the birth of a child to such son, subject to be opened up to let in other children of such son afterwards born alive.   p. 497

2. WILLS.—*Construction.—Qualified or Determinable Fee.*—Where a will devised, from an estate in lands owned in fee, a life estate to testator's two sons in common, subject to the widow's life estate, the remainder in fee going to the children, if any be born, of the sons, such devise did not exhaust the testator's entire estate in the fee, the undisposed of remnant being a base, determinable or qualified fee, which, when it shall be determined that the contingency of the birth of a child to a son cannot occur, will ripen into a remainder in fee.   p. 498.

3. ESTATES.—*Determinable or Qualified Fee.*—A determinable or qualified fee is an estate in fee for the reason that it may continue forever, and it is an estate of inheritance descendible to heirs and may be assigned or devised.   p. 499.

4. WILLS.—*Construction.—Residuary Clause.*—Where a will failed to make a specific devise of a determinable fee in lands owned by the testator, it passed into the residue of the estate that was disposed of by the general residuary clause, which devised it to the widow and two sons as tenants in common in equal shares.   p. 499.

5. WILLS.—*Construction.—Estates.*—Where a testator devised to each of two sons, A and B, a life estate in the undivided half of lands owned in fee, subject to the prior life estate of the widow, the remainder in fee going to the children, if any be born, of the sons, the widow and sons are, by reason of the remnant of the estate coming within the operation of the general residuary clause of the will, the owners, as tenants in common in equal shares, of a vested remainder in fee in the undivided one-half of the lands wherein A holds a life estate, limited on the successive life estates of the widow and A therein and by the contingency of the birth of a child to A. On a child being born to A the remainder in fee will determine and a remainder in fee limited on such life estates will vest in such child, subject to open up to let in after born children, and on the decease of A, no child having been born alive to him, said remainder in fee in the undivided one-half of said lands will then become absolute in the heirs of A, in the testator's widow and in B, or in their respective heirs, if deceased;

and the parties would have similar rights and interests in the other half of such lands, involving, however, the contingency of the birth of children to B.  p. 499.

6.  PARTITION.—*Right of Action.*—*Possession.*—Where a testator devised a life estate to each of two sons in the undivided half of certain lands, subject to the prior life estate of the widow, she cannot maintain an action in partition, since as sole owner of the life estate she is entitled to exclusive possession of the land.  p. 502.

7.  PARTITION.—*Right of Action.*—*Possession.*—Where a life estate in certain lands was created in the testator's widow, with subsequent life estates to two sons, neither of them can maintain an action in partition during the life of the mother, since, in the absence of a conveyance or surrender by the widow of any part of her life estate to the sons, they have no right of possession to the lands.  p. 502.

8.  PARTITION.—*Right of Action.*—*Possession.*—Where, by reason of intervening life estates, the right to present possession is not annexed to the base or determinable fee of which a testator's widow and two sons are tenants in common, neither, as tenants in such qualified fee, can enforce partition.  p. 502.

9.  PARTITION.—*Right of Action.*—*Possession.*—Even where partition is a matter of equitable cognizance only those in possession or entitled to possession may file a bill for partition in equity.  p. 503.

10.  JUDGMENT.—*Relief.*—*Conformity to Pleadings.*—Where an answer is filed, the court may grant any relief consistent with the case made by the complaint and embraced within the issues, as provided by §394 Burns 1914, §385 R. S. 1881, and an action in partition may be regarded as a proceeding to convert the lands into a fund and for the investment of the same where the facts in the case warrant such a conclusion.  p. 503.

11.  REMAINDERS.—*Sale of Property.*—*Equity Jurisdiction.*—*Administration of Estates.*—The trial court, in the exercise of its chancery powers, is clothed with jurisdiction to direct the sale and conversion of lands in fee held by a life tenant with conditional estates over to unascertained persons, where emergencies arise rendering action by the court imperative in order that the persons interested may be protected in their legal rights, and the body of the estate preserved for them, but such extraordinary powers should be used with caution.  p. 508.

12.  REMAINDERS.—*Sale.*—*Order of Court.*—*Persons Bound.*—In an action for partition, where it appears that all persons in being having an interest in the lands are parties to the suit, and where the exigencies of the situation require such action on the part of the court, the trial court may by proper decree order that the lands be sold free of all life estates and remainders and that title in fee simple shall pass to the purchaser, and such a decree is binding on the unborn grandchildren of a testator who devised to them,

subject to intervening life estates, the fee in the lands involved in the action.  p. 509.

13. REMAINDERS.—Sale.—Order of Court.—Proceeds.—While the court, in the exercise of its chancery powers, has the right to direct the sale and conversion of lands in fee held by a life tenant with conditional estates over to unascertained persons, yet such power should not be exercised beyond the scope of the necessity of protecting the estate and the interests of the beneficiaries therein, and, where the exigencies of the case require the sale of the lands, the funds derived therefrom must be substituted for the lands, all interests and estates in the latter being transferred to the former, and the fund must be administered as nearly as possible as the lands would have been handled had there been no conversion; but where the court, in the exercise of its discretion, deems that the circumstances of the case require such action, it has the power to order the payment to the life tenants of the estimated value of their estates and allow the residue to accumulate at interest for the benefit of the contingent owners.  p. 511.

14. PARTITION.—Sale of Lands.—Order of Court.—Proceeds.— Distribution.—In an action for partition, where it was disclosed that a testator had devised, from lands owned in fee, a life estate to two sons in common, subject to the widow's prior life estate therein, the remainder in fee going to the children, if any be born, of such sons; the fund arising from the sale of the land as decreed by the court, should, by reason of the special circumstances of the case, be distributed as follows: first, the costs and expenses of the proceeding should be paid out of the fund; second, the net income from the residue of the fund should be paid to the widow during her life, and upon her death, if both sons shall be alive, the net income from one-half the fund should be paid to each son during the remainder of his life, and on the decease of a son, a child or children having been born alive to him, the testator's widow having theretofore died, one-half the fund should be paid to such child or children or their heirs, but if a son shall die, subsequent to the death of the widow, without children having been born to him, and the brother survives, distribution of half of the fund should be to the heirs of the deceased son, to the heirs of the widow and to the surviving son; and on decease of the other son, under like circumstances, a similar distribution should be made of the other half of the fund, while the decease of a son during the lifetime of the widow would not change the course of the distribution, but would postpone it until her death.  p. 513.

From St. Joseph Circuit Court; *Walter A. Funk,* Judge.

Action by Alexis Coquillard and another against

Joseph A. Coquillard. From a judgment for plaintiffs, the defendant appeals. *Reversed.*

*Rich & Rich*, for appellant.

*Hubbard & Hubbard*, for appellees.

CALDWELL, C. J.—This appeal is a companion case to that of *Coquillard v. Coquillard* (1916), *ante* 426, 113 N. E. 474, decided at this term. The latter involves items Nos. 3 and 17 of the will of Alexis Coquillard, Sr., and real estate thereby devised. This appeal involves items Nos. 2 and 17 of such will and real estate devised by such items. The questions properly presented on this appeal arise under exceptions reserved to conclusions of law stated on a special finding of facts.

The substance of the finding is as follows: Alexis Coquillard, Sr., died testate in St. Joseph county, seized in fee of certain described real estate in said county, of the probable value of $43,375. His will was probated March 3, 1890. He left surviving him his widow, appellee Maude M. Coquillard, and his two sons, the appellee Alexis Coquillard, Jr., and appellant Joseph A. Coquillard. He left surviving him no other children or descendants. Maude M. Coquillard was born October 23, 1854; Alexis Coquillard, Jr., January 21, 1882; and appellant December 18, 1884. Both sons are unmarried and childless. The estate has been fully settled and the executor discharged, and all trusts created by the will have been fully executed. The real estate involved is suburban, subject to heavy taxes and assessments for urban improvements. It yields but little income, and is a source of expense much exceeding the income. Its main value consists in its fitness for subdivision and sale as urban real estate. It is not susceptible of division and cannot be partitioned among the respective

owners, and it should be sold and the proceeds divided. Item No. 2 of the will is as follows:

"I give to my said wife" (the lands involved, describing them) "to have and to hold the same unto my said wife during the period of her natural life, and at her death, I give said lands to my children, Alexis Coquillard, Jr., and Joseph A. Coquillard, and such other children as I may have born to me, to be held by them share and share alike, during their respective lives, and on the death of my several children, then I give the remainder of the share of each child in said land in fee simple to such children as my said children may leave surviving them."

Item No. 17 is as follows:

"I give and bequeath all the residue of my estate both real and personal to my wife and children, my wife to have one-third and my children two-thirds thereof."

The first and second conclusions of law are to the effect that appellee, Maude M. Coquillard, owns an estate in said lands for the period of her natural life, subject to which appellee Alexis and appellant Joseph A. own a life estate therein. The other conclusions of law are as follows: (3) That Alexis Coquillard, Jr., Maude M. Coquillard, and Joseph A. Coquillard each has a fee simple in the undivided one-third of all said real estate, subject first to the life estate of Maude M. Coquillard, and subject second to the life estate of Alexis Coquillard, Jr., and of Joseph A. Coquillard; that said fee is so vested in each of said parties until the happening of the following contingency, to wit: The death of Alexis Coquillard, Jr., with a child or children surviving him, or the death of Joseph A. Coquillard, with a child or children surviving him. (4) After the death of Maude M.

Coquillard, and upon the death of Alexis Coquillard, Jr., with a child or children surviving him, a remainder in fee in the undivided one-half of said real estate shall vest in such child or children; that after the death of Maude M. Coquillard, and upon the death of Joseph A. Coquillard, with a child or children surviving him, a remainder in fee in the undivided one-half of said real estate shall vest in such child or children. (5) That said lands should be sold free of all life estates and remainders, and title in fee simple passed to the purchaser, free from all claims of parties herein, their heirs and descendants. (6) That on the sale of any of said lands, the proceeds, after the payment of costs, fees and expenses, as adjudged hereafter by the court, shall be distributed as follows: To Maude M. Coquillard, the value of her life estate, as herein found, to be computed according to the mortality tables; to Alexis Coquillard, Jr., and Joseph A. Coquillard, each the value of his life estate as herein found, to be computed according to the mortality tables; the residue to be divided into three equal parts. Each of said sons, parties hereto, shall execute his bond payable to the State of Indiana, and conditioned that the obligor shall pay over and account to the duly appointed guardian of any child or children that should be born to and shall survive the obligor the share of such child or children under the second clause of testator's will, as herein found.

In order that we may ascertain whether the court's conclusions of law were correctly stated on the facts found, it becomes necessary to construe items Nos. 2 and 17 of the will involved, and especially respecting the nature and quantity of the various estates thereby created. There were but two children born to testator, each of whom survived

him and are yet living, namely, appellee Alexis and appellant Joseph A. Coquillard. The possibility of other children being born to him was removed by his death. It results that the clause in item No. 2 of the will, reading as follows, "and such other children as I may have born to me" may be eliminated in determining what quantity of estate was devised to the two sons by said second item. It is apparent that by such item there is created in the widow an estate in all the lands involved for the period of her natural life and that, subject to such life estate in the widow, there is created in each son an estate in the undivided one-half of such lands for the period of his natural life. As long as both sons are living they, as life tenants, are tenants in common in all such lands, subject to the mother's interest as prior life tenant. The literal equivalent of the remaining portion of such item in its relation to either son may be expressed as follows: "On the death of such son, then I give the remainder of his share in such lands in fee simple to such children as he may leave surviving him." The estate created in each son being but a life estate, as we have indicated, strictly speaking there could be no remainder of his share after his death. It is evident, however, from the language used, that the testator thereby intended to limit on such life estate a remainder over in fee simple to the children of such son. No child has been born to either of testator's sons. We have then a situation wherein a remainder in fee is limited to a person or persons not ascertained, because not in being. The case is thus brought within the fourth class of contingent remainders, as defined by Fearne, thus: "When a remainder is limited to a person not ascertained or not in being at the time when such limitation is made."

Fearne, Cont. Rem. 9; 24 Am. and Eng. Ency. Law 397. In Butler's notes to Fearne on Contingent Remainders, §187, the author gives as an example of a contingent remainder of such class, the case where a remainder is limited to the first son of B, who has no son then born. The item of the will here then creates in the child or children of each of the sons of the testator a contingent remainder in fee in the undivided one-half of the lands involved. Such remainder has not as yet vested, for the sufficient reason that no such child has been born. We are required to determine the contingency on which such remainders will vest; whether, in the case of either son, the birth of a child or children to him within his lifetime is sufficient to that end, as to the undivided one-half of the lands involved, or whether such remainder will so vest only on the decease of said son leaving a child or children surviving him.

The third item of the will of Luke Walters, involved in *Alsman* v. *Walters* (1914), 184 Ind. 565, 106 N. E. 879, 111 N. E. 921, is in legal effect practically identical with the language used here, in creating estates in testator's sons and their children. The language used there is as follows: "I give and bequeath to my son, Francis M. Walters, during his natural life and after his death to his children surviving him in fee simple," certain described lands. In that case, two children had been born to Francis M. Walters, both of whom were living at the death of the testator. Appellee in that case was one of such children. The other child died in the lifetime of the life tenant, leaving the appellant, her son, surviving her. Under such circumstances the Supreme Court, after a comprehensive review and analysis of the decided cases, announced its decision, the holding being

indicated by the following, quoted from the opinion: "We are of the opinion that on the death of Luke Walters, the fee simple title to the land in question vested absolutely in appellee, and appellant's mother, subject to diminution to let in after born children, and consequently the court erred in concluding that appellee is the sole owner of the land." The decision there is to the effect that on the decease of the testator, the remainder in fee simple, subject to the life estate created in Francis M. Walters, vested in the children of the latter then in being; that other children having been born to the life tenant, Francis M. Walters, the estate theretofore vested in fee as aforesaid, opened up to receive such other children at birth as owners in fee on an equality with the children living at the death of the testator; that one of such children having died intestate, prior to the termination of the life estate, his interest descended to his heirs. See, also, *Amos* v. *Amos* (1889), 117 Ind. 19, 24, 19 N. E. 539, and *McIlhinny* v. *McIlhinny* (1894), 137 Ind. 411, 37 N. E. 147, 24 L. R. A. 489, 45 Am. St. 186. At page 418 of the case last cited, the following language is used: "Accordingly, it has been held by this court, and so ruled at common law, that a valid remainder might be limited on a particular estate for life, to unborn children, and, on their birth during the life tenancy, the remainder would immediately vest. The remainder is contingent before, and vested after, the birth of the remainderman." It results, under authority of *Alsman* v. *Walters, supra*, and 1. we so hold, that while in the case at bar the estate limited to the unborn children of either son of the testator by item No. 2 of said will is and remains a contingent remainder in fee, such

Vol. 62—32

estate will vest as a remainder in fee on the birth of a child to such son, subject to be opened up to let in other children of such son afterwards born alive.

It thus appears that, by virtue of item No. 2 of the will, there are carved from the estate in fee owned by testator at the time of his decease, in the lands involved, estates in number and quantity as follows: (1) A life estate in the widow as indicated; (2) a life estate in each son, subject to the life estate in the widow also as indicated; (3) a contingent remainder in fee in the unborn child or children of each son. It is apparent also, that the entire quantity of estate owned by testator in such lands is not exhausted by the estates carved therefrom by such item No. 2. There is left a remnant limited on the successive life estates, and limited by such contingent remainders in fee created in a child or children of the respective sons. That is, directing our attention to an undivided one-half of such lands, in order that we may make ourselves clear, such undivided half is devised to the widow for life, remainder over for life to either son as the case may be, and a contingent remainder in fee to the unborn child or children of such son. The remnant in such half is a vested estate therein limited on the successive life estates and limited by such contingent remainder in fee. The contingent event is of a nature such as that it may or may not occur. The course of time, however, will disclose that it has occurred or that it can not occur. A child or children may be born to such son, or his decease will render such event impossible. The happening of the contingency will terminate the estate which we have designated as a remnant. The disclosure that such contingent event can not occur will ripen such

remnant into a remainder in fee. The same line of reasoning leading to a like conclusion applies, of course, to the other half of the estate under consideration. It thus appears that the estate which is undisposed of by item No. 2 of the will is one class of what is denominated a base, determinable or qualified fee. 16 Cyc 602; 10 R. C. L. 652; *First Universalist Society* v. *Boland* (1892), 15 L. R. A. 231, note; Tiedeman, Real Prop. §§36, 211.

3. Such an estate is an estate in fee for the reason that it may continue forever. It is an estate of inheritance descendible to heirs and may be assigned or devised. Id.; and *Aldred* v. *Sylvester* (1916), 184 Ind. 542, 111 N. E. 914; *Mendenhall* v. *First New Church, etc.* (1911), 177 Ind. 336, 98 N. E. 57. Such determinable fee not being devised by item No. 2 of the will, passed into the

4. residue of the estate, and by item No. 17, which is a residuary clause, was devised to the widow and the two sons as tenants in common in equal shares. Page, Wills §507; *Barker* v. *Town of Petersburg* (1907), 41 Ind. App. 447, 82 N. E. 996. It follows that the first conclusion of law is correctly stated. The second should be more definite, to the effect that Alexis Coquillard is the owner of an estate in the undivided half of said lands for and during the period of his natural life, limited, however, on the preceding life estate in Maude M. Coquillard; and that Joseph Coquillard is the owner of a like estate in the other undivided one-half of such lands. The third

5. and fourth conclusions should be restated, to the effect that in one undivided half of such lands Maude M. Coquillard, Alexis Coquillard and Joseph Coquillard are the owners as tenants in common in equal shares of a vested remainder in fee, limited on the successive life

estates of Maude M. Coquillard and Alexis Coquillard therein, and limited by the contingency of a birth of a child born alive to Alexis Coquillard; that on the birth of such child, said remainder in fee will determine and thereupon a remainder in fee limited on such life estates will vest in such child, subject to open up as aforesaid; that on the decease of Alexis Coquillard, no child having been born alive to him, said remainder in fee in the undivided one-half of said lands will thereupon become absolute in the heirs of Alexis Coquillard and in Maude M. Coquillard and Joseph Coquillard, if living, otherwise in their respective heirs. The conclusions should be to the same effect respecting the other half of such lands, involving the contingency of the birth of a child or children to Joseph Coquillard, rather than to Alexis Coquillard, however.

Preliminary to a consideration of the fifth and sixth conclusions, we are required to determine whether, under the special circumstances of this case, appellees are entitled to maintain this action. Appellee Maude M. Coquillard, as life tenant, is entitled to the sole and exclusive possession of the lands involved during the period of her natural life. Appellee Alexis is the owner of a life estate in remainder in the undivided one-half of such lands; appellant is the owner of an estate of like quantity in the other half of the lands. Such estates, being subject to the widow's life estate, neither son has any possessory right in the lands within the period of her natural life. By reason of the intervening life estates, the right to present possession is not annexed as an incident to the base or determinable fee of which the parties to this proceeding are tenants in common, by virtue

of item No. 17 of the will as aforesaid. Where lands are owned and held in cotenancy, with the right of immediate possession as an incident to the estate so owned, each tenant owner is entitled to the possession of the lands, not exclusively, but in conjunction with his cotenants. Such a condition sometimes leads to serious disagreements and affords to an unscrupulous tenant an opportunity to annoy and take advantage of his cotenants, whereby their beneficial interests in the lands may be greatly prejudiced. The possibilities of such a situation and the actual experiences of cotenants thereunder gave rise at common law to the remedy by enforced partition, later extended by English statutes and in equity, whereby a cotenant may obtain relief from such a condition, in that his lands may be set off to him in severalty. 30 Cyc 169. Freeman, Coten. and Part. §420, *et seq.* Except in a case of a joint or common possession or a joint or common right to immediate possession, the reasons that gave birth to such remedy do not exist. The remedy existing, however, is not confined to those cases wherein there is actual friction or disagreement between cotenants respecting possession. But except as modified by statute in certain jurisdictions, the rule seems to be universal that in order that a person may maintain partition, it must appear that title with possession or the right to immediate possession as a cotenant rests in him. The act of 1909 (Acts 1909 p. 339, §124a Burns 1914) has in some respects modified the ancient rule in this State, but not as applied to the facts in the case at bar. Under that act, where an estate has been created in the whole of certain lands in one person for the period of his natural life, with remainder in fee to others, and where, by conveyance or otherwise, the life tenant

acquires the fee to an undivided portion of such lands, such life tenant, although entitled to the possession of the whole of such lands, or the owner or owners of the unconveyed portion of such remainder in fee, although not entitled to the possession of any part of such lands, may maintain partition; or, where one of such remaindermen acquires such life estate or an undivided interest therein, either he or such other remaindermen, although the latter is not entitled to possession, may maintain partition. *Smith* v. *Andrew* (1912), 50 Ind. App. 602, 98 N. E. 734. To the extent indicated, such statute modifies or extends the common-law rule, but it is not applicable to the facts of this case.

It follows from what has been said that Maude

6. M. Coquillard, as life tenant, can not maintain partition as she holds her life estate as sole owner rather than as a cotenant. 30 Cyc 178.

7. As she has not surrendered or conveyed her life estate, or any part thereof, to the subsequent life tenants, Alexis, as one of the latter, is not entitled to partition as no possessory right is annexed to his estate. *Eberle* v. *Gaier* (1913), 89 Ohio 118, 105 N. E. 282; *Bice* v. *Nixon* (1890), 34 W. Va. 107, 11 S. E. 1004; *Brillhart* v. *Mish* (1904), 99 Md. 447, 58 Atl. 28. For reasons already indicated, neither Maude M. Coquil-

8. lard nor Alexis Coquillard, as a tenant in such qualified fee, can enforce partition. It follows that if this action should be considered merely as a proceeding for the partition of lands it can not be maintained. *Fry* v. *Hare* (1905), 166 Ind. 415, 77 N. E. 803; *Tower* v. *Tower* (1895), 141 Ind. 223, 40 N. E. 747; *Hawkins* v. *McDougal* (1890), 125 Ind. 597, 25 N. E. 807; *Shaw* v. *Beers* (1882), 84 Ind. 528; Freeman, Coten. and Part. (2d ed.) §§440, 446; *Weston* v. *Stoddard* (1893), 20 L.

R. A. 624, note; note to *Brown* v. *Brown* (1910), 28 L. R. A. (N. S.) 125. The rule-is the same where partition is a matter of equitable cognizance, as only those in possession or entitled to possession may file the bill in such jurisdiction. Pomeroy, Eq. Jurisp. (2d ed.) §1387, note 1; Freeman, Coten. and Part. §440; 2 White and Tudor, Leading Cases in Eq., note to *Agar* v. *Fairfax,* 894.

We are not required, however, to regard this action as a proceeding for partition. As indicated, certain very essential elements of that sort of action are lacking. The characterizing facts here are nonessentials in a proceeding for partition. Partition resulting in the division of the lands, if the court were authorized to award it, would be ineffectual as a remedy. The embarrassments of the situation would still exist. If partition were effectual, it would be because the lands were ordered sold as indivisible. The parties in interest here may be awarded those considerations to which they seem to be entitled and all their rights protected only by a sale of the lands and a reinvestment of the proceeds. The characterizing facts appeal to the court to that end, rather than that the lands be partitioned. Where an answer is filed, the court may grant any relief consistent with the case made by the complaint and embraced within the issue. §394 Burns 1914, §385 R. S. 1881; *Humphrey* v. *Thorn* (1878), 63 Ind. 296. Considering then, the facts that individualize the action, we regard this as a proceeding to convert the lands into a fund and for the investment of the fund. The nature of the action being so regarded, three questions are presented for our consideration: First, in such a general situation as is presented here, whether the trial court in the exercise of its chancery jurisdiction is

clothed with power to direct the sale of the lands; second, whether under the specific facts, such power, if it exists, was properly exercised; and third, whether the court's decree, if otherwise properly entered, is binding on the contingent owners who may hereafter be born.

We proceed to consider these questions. The situation is as follows: The testator evidently contemplated that this real estate should be a source of income to the widow during her life, and thereafter to the sons during their respective lives, and that the corpus of the estate should be preserved to the unborn children of the latter. Although he did not specifically so direct, it was probably his intent that the land should be preserved as land until it eventually vested by absolute title under the will. Under the facts, and by reason of changed conditions which the testator probably did not foresee, his purpose is being frustrated, and is likely to be completely defeated unless the arm of a court exercising chancery powers may be interposed to the end that the lands may be sold and the various estates and interests therein transferred to the fund. Such changed conditions and the specific facts are to the following effect: At the decease of the testator, the real estate involved was situate near the city of South Bend. It was then regarded as farm land, and was liable to charges only as such. The city, however, has rapidly increased in territorial extent, population and industrial importance. The lands now are urban or suburban to such city. Although yielding but small income, they have become subject to heavy charges for taxes, public improvement assessments and the like. As a consequence, the expense of maintaining the land greatly exceeds the income. As contemplated by the testator, these lands

should be a source of income to the widow, and later, in the natural course of events, to the sons. The expenses, however, swallow up the income. Sums in addition must be paid to preserve the body of the estate. Unless the court may intervene, the lands cannot be conveyed by good title until after the decease of the sons. Their life expectancies at the commencement of this action in 1914, as estimated by standard tables of mortality, were approximately thirty-three and thirty-four years respectively. If the owners of limited estates in the lands were disposed to continue to discharge all liens and expenses until the lands may be conveyed, it would seem to be unreasonable to require or expect them to do so. The estimated value of the land as found by the court, if invested at the legal rate, would yield an income of more than double the value of the lands within the period of such expectancies. Under the circumstances, it would seem that the best interests of all concerned require that the lands be transformed into a fund. The interests of the widow and sons so require in order that they may receive the income in succession as intended by the testator. The interests of the unborn contingent owners so require in order that the body of the estate, although converted into personality, may be preserved for them.

It cannot be doubted that the power is lodged in chancery in a proper case, where all persons interested and likely to be affected by the decree are before the court, to convert realty into personality, and to direct and supervise reinvestment. Thus, *Ridley* v. *Halliday* (1900), 106 Tenn. 607, 61 S. W. 1025, 53 L. R. A. 477, 82 Am. St. 902, involved lands held under a grant for the use of a life tenant with remainder over to successive classes, some of whom were not in being. It was

made to appear there that the interests of all concerned plainly required the sale of the lands and the reinvestment of the proceeds. In approving a decree to that end, the court of Chancery Appeals of Tennessee held that, under the circumstances presented, a court of chancery has inherent power to order a sale, the interested persons *in esse* being before the court, and that a decree so entered is binding on contingent owners not in being. The facts there were very similar to those here, differing principally in that the lands there had been conveyed and were held in trust for the life tenant and remaindermen.

In *Curtiss* v. *Brown* (1862), 29 Ill. 201, 230, likewise the lands involved were held in trust for the use of a life tenant with contingent interests over to unascertained persons, and, in a situation similar in effect to those presented here, the court, in holding that chancery is clothed with power to grant relief by a sale, uses this language: "Can it be said that the beneficiary of an estate which would bring in the market one hundred thousand dollars, should perish in the street from want, or be sent to the poor-house for support, or that the estate should be totally lost, because there is no power in the courts to relieve against the provisions of the instrument creating this trust? Exigencies often arise not contemplated by the party creating the trust, and which, had they been anticipated, would undoubtedly have been provided for, where the aid of the court of chancery must be invoked to grant relief imperatively required; and in such cases the court must, as far as may be, occupy the place of the party creating the trust, and do with the fund what he would have dictated had he anticipated the emergency."

A like conclusion was reached in *Hale* v. *Hale*

(1893), 146 Ill. 227, 33 N. E. 858, 20 L. R. A. 247, wherein the court affirmed a decree directing the sale of lands thereby affecting the titles of certain infants and the contingent interests of unborn persons. It was made to appear there that the lands were unproductive and subject to heavy charges by reason of their proximity to Chicago, but that they might be sold for a substantial sum, which upon being invested or loaned, would yield to the persons interested a considerable income. The decision is justified on the ground that where it is for the benefit of infants, courts of equity have the power, by virtue of their general jurisdiction over the estates of minors and others under disabilities, to authorize a conversion of real estate into personalty and of personalty into realty.

Each of the cases above cited and discussed involved an estate held in trust for the use of life tenants and contingent remaindermen, including persons not in being. While the fact that an express trust is involved may clothe a court of chancery with jurisdiction to direct its administration in order that its subject-matter may be preserved and its beneficiaries protected in their rights, yet some other equitable consideration must exist in order that the court may properly exercise its power, by directing the conversion of trust property into some other form where such conversion is not specifically authorized by the instrument of trust. In each of such cases, such other consideration consisted in that it was made to appear that the trust property was likely to be lost or that it was subject to great depreciation unless such conversion was directed, and consummated. A like consideration exists here, and we do not believe that the mere fact that no express trust is involved stands as a bulwark against action

by the court. To this effect is *Gavin* v. *Curtin* (1898), 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776, where no express trust was involved. The lands there were held under a devise to testator's daughter for life, with contingent interests over to others, including persons not in being. A decree directing the sale, on a showing that the lands were comparatively unproductive and that the charges and expenses very much exceeded the income, was approved; the court saying in substance that independent of the existence of a trust, a court of equity has jurisdiction to intervene where it is made to appear that otherwise a substantial right would be lost, and that in the presence of some exigency which makes the action of the court practically indispensible, it properly exercises its power. To the same effect is *Baldrige* v. *Coffey* (1900), 184 Ill. 73, 56 N. E. 411, following and approving *Gavin* v. *Curtin, supra.* See, also, *Ruggles* v. *Tyson* (1899), 104 Wis. 500, 79 N. W. 766, 81 N. W. 367, 48 L. R. A. 809; *Clyburn* v. *Reynolds* (1888), 31 S. C. 91, 9 S. E. 973; *Springs* v. *Scott* (1903), 132 N. C. 548, 44 S. E. 116; *Mayall* v. *Mayall* (1896), 63 Minn. 511, 516, 65 N. W. 942; *Bennett* v. *Nashville Trust Co.* (1912), 127 Tenn. 126, 153 S. W. 840, 46 L. R. A. (N. S.) 43, Ann. Cas. 1914A 1045.

Respecting the first two questions suggested as presented for consideration, we conclude that the trial court in the exercise of its chancery 11. powers is clothed with jurisdiction to direct the sale and conversion of lands in fee held by a life tenant with conditional estates over to unascertained persons, where emergencies arise rendering action by the court imperative in order that the persons interested may be protected in their legal rights, and the body of the estate pre-

served for them, and that while such extraordinary powers should be used with caution, in the case at bar, the court properly exercised such powers to the end indicated.

Directing our attention more particularly to the third question above suggested, all persons interested in the subject-matter of this proceeding and who are in being, are before the court. The life tenants and owners of such qualified fee, which as we have said is an estate of inheritance, are parties. The owners of the contingent interests can not be made parties as they are not in being. If in being, they would be necessary parties. The persons before the court are interested in urging upon the attention of the court every consideration that such unborn persons would be interested in presenting if in being and parties to the proceeding. Under such circumstances, and where the exigencies of the situation require action on the part of courts, impelled by practical necessity, they assume jurisdiction. Decrees entered under such circumstances are binding on persons not in being. We conclude that a proper decree entered in this proceeding is binding on the unborn children of testator's sons, and that the fifth conclusion of law is correct. In addition to authorities above cited, see the following: *Bofil* v. *Fisher* (1850), 3 Rich. Eq. 1, 55 Am. Dec. 627; *Downey* v. *Seib* (1906), 8 L. R. A. (N. S.), 49, note; *Powell* v. *Wright* (1844), 7 Beav. 444; *Kent* v. *Church of St. Michael* (1892), 136 N. Y. 10, 32 N. E. 704, 18 L. R. A. 631, 32 Am. St. 693; *Dunham* v. *Doremus* (1897), 55 N. J. Eq. 511, 37 Atl. 62; Story, Eq. Pleading §§145, 146; Freeman, Coten. and Part. (2d ed.) §482; *Mead* v. *Mitchell* (1858), 17 N. Y. 210, 72 Am. Dec. 455; *Rutledge* v. *Fishburne* (1903), 97 Am. St., note p. 766; *Cheesman* v. *Thorne* (1833),

1 Edw. Ch. (N. Y.) 629; *Fox* v. *Fee* (1897), 24 App. Div. 314, 49 N. Y. Supp. 292; *Carter* v. *White* (1904), 101 Am. St. 870, note; *Coquillard* . v. *Coquillard, supra.*

We can not, however, approve the sixth conclusion. It contemplates the depletion of the fund by paying to the parties to this proceeding the estimated value of their respective life interests. On the investment of the fund, Maude M. Coquillard would be entitled to the net income therefrom during life. Thereafter, each son would be entitled to the net income from one-half of the fund during the remaining period of his life. The court probably concluded that the payment to each life tenant of the estimated value of his interest in the fund would accomplish the legal equivalent of payment to him of income as indicated, and therefore that the payment of such legal equivalent is justified. If this were true, it will be observed that there is no provision for the restitution of the fund by the accumulation of interest on the residue. In addition, the conclusion is to the effect that such residue should be divided into three equal parts, but there is no specification as to the disposition of the parts. Presumably the court contemplated the payment thereof to the parties to this proceeding as owners of such qualified fee. The stipulation for the protection of the contingent remaindermen is indefinite. The decree entered on the conclusions contains no provision for their protection. On the subject of the distribution of the fund, it is simply to the effect that the costs and expenses be paid, and that the residue of the fund be distributed to the parties to the proceedings in proportion to their several interests.

A proceeding such as this is maintainable only on the theory that by reason of some exigency

growing out of changed conditions, it becomes necessary to convert lands into personalty in order

13.   that the body of the estate may be preserved.

The courts are in accord, that in order to the validity of the proceedings the funds must be substituted for the lands, all interests and estates in the latter transferred to the former, and that the fund must be ordered administered as nearly as possible as the lands would have been handled had there been no conversion. *Noble* v. *Cromwell* (1858), 26 Barb. (N. Y.) 475; *Gavin* v. *Curtin, supra; Mead* v. *Mitchell, supra; Cheesman* v. *Thorne, supra; Bofil* v. *Fisher, supra; Monarque* v. *Monarque* (1880), 80 N. Y. 320, 326; *Barnes* v. *Luther* (1894), 77 Hun. 234, 28 N. Y. Supp. 400; *Rutledge* v. *Fishburne, supra,* note p. 767.

As we have indicated, it was apparently testator's intention that the lands involved here should be held, owned and enjoyed as lands under the various estates created therein until title became absolute under the terms of the will. While, as we have said, the courts by virtue of the compelling force of some necessity have the power to encroach upon the intention of the testator, in order that the estate may be preserved and the interests of the beneficiaries protected, such power should not be exercised beyond the scope of influence of such necessity. The separation of the life estates from the estates in remainder by estimating the values of the former and paying such values to the life tenants is not required here by the exigencies of the situation. To do so would constitute an unnecessary and, therefore, unauthorized infringement upon the testator's intention. The payment to the life tenants of the estimated values of their life estates and allowing the residue to accumulate at interest for the benefit of the contingent owners,

would doubtless accomplish the legal equivalent of holding the entire fund in trust as hereinafter indicated. It is not likely, however, that by the former method the practical equivalent of the latter would be attained. It is within the power of the court, in its discretion, to dispose of the fund in the former method. 16 Cyc 616, 639; 30 Cyc 291; *Swain* v. *Hardin* (1878), 64 Ind. 85; *Russell* v. *Russell* (1874), 48 Ind. 456; *Datesman's Appeal* (1889), 127 Pa. 348, 17 Atl. 1086, 1100. Under the special circumstances of this case, however, we do not believe that such discretion should be exercised.

In *Ruggles* v. *Tyson*, *supra*, under facts similar to those involved here, it is expressly held, after a full examination of the decided cases, that the court, in the absence of some overpowering necessity, held not to exist there and not shown to exist here, has no power to direct the separation of the life estate from the estate in remainder by estimating the value of the former and paying such value to the life tenant. As is said there, such a course would substitute an expectancy for a certainty. The remaindermen here, on the termination of the life estates, the contingency having happened, are entitled under the will to the undiminished body of the estate. Likewise, the lands being transformed into money, they are entitled to the undiminished body of the fund. The exigency of the situation loses its force on the conversion of the real estate into personalty. To meet such exigency fully, a separation of the life estates from the estates in remainder is not required. As to whether the remaindermen would receive the equivalent of the body of the fund, by the separation of the life estates as indicated and by allowing interest to accumulate on the residue, is speculative.

The problem of handling the fund and its final distribution, while complex, is rendered comparatively simple by keeping in mind the various estates and interests created in the lands by the will. In a general way, the course should be as follows: The costs and expenses of the proceeding should be paid out of the funds, since such costs and expenses are incurred for the benefit of all persons interested therein. A trust thereupon of necessity arises involving the residue of the fund. Such trust should be administered and executed under the guidance and supervision of the court, and in so doing the testator's intent should be carried out as nearly as possible. To that end, the net income should be paid to the widow during her life. If at the decease of the widow, the sons are living, the net income from one-half of the fund should be paid to each son during the remaining portion of his life. There can be a final distribution of one-half the fund on the decease of a son, the widow having theretofore died, and of the other half under like circumstances. On the decease of a son, a child or children having been born alive to him, the widow having theretofore died, distribution of one-half the fund should be to such child or children or their heirs or legatees. On the decease of the other son, under like circumstances, there should be a distribution of the remaining one-half of the fund. On the decease of a son, no child having been born to him, the widow having theretofore died, and the brother surviving, distribution of half of the fund should be to the heirs or legatees of the deceased son, to the heirs or legatees of the widow, and to the surviving son. On the decease of the other son, under like circumstances, distribution should be as aforesaid of the other half of

the fund, except of course, to his heirs or legatees instead of to him. The decease of a son within the lifetime of the widow would not change the course of distribution from as above indicated; it would simply postpone it until the decease of the widow. These general observations are made for the guidance of the court in entering its decree.

The judgment is reversed, with instructions to the court to restate its conclusions of law in harmony with this opinion and to decree accordingly.

Note.—Reported in 113 N. E. 481. Rights and remedies of remaindermen, 14 Am. St. 629. See under (1) 40 Cyc 1664, 1674, 1677; (2) 40 Cyc 1584–1589; (4) 40 Cyc 1949, 1950; (5) 40 Cyc 1591, 1593; (6), (7), (8), (9) 30 Cyc 178, 182, 190, 199; (11), (12) 16 Cyc 653, 654.