# EXTRAS RAYMOND BELIVEAU AND OTHERS v. JOSEPHINE BELIVEAU AND ANOTHER.[1]

April 21, 1944.

No. 33,661.

[1]Reported in 14 N. W. (2d) 360.

236

*Arthur A. Stewart,* for appellant.

*Everett L. Young* and *Streissguth & Gislason,* for respondents.

PETERSON, JUSTICE.

This case is here on appeal from the judgment. The findings of fact are not challenged, but the conclusions of law and the judgment are.

The case was tried on February 15, 1943. For reasons to be stated later, the conclusions of law and the judgment are to be viewed in the light of the facts as they appeared at that time.

By the terms of the will of her late husband, Alizam Beliveau, and the final decree of distribution of the probate court assigning the decedent's property pursuant thereto, the defendant Josephine Beliveau took a life estate in all of Alizam's property coupled with a power of sale and disposition and the right to use the proceeds of any sale for her comfort and support, with remainder over in specified portions to his brothers and sister, the plaintiffs. The

will contained a provision that in case the profits, rents, and income from his property should be "sufficient to properly care for, support and maintain my said wife, then I prefer that my real estate be kept intact."

Alizam died on June 11, 1935, leaving about 320 acres of farm land in Sibley county, on which there were farm buildings and a dwelling house, some personal property consisting of household goods and furnishings, almost $300 in cash, some tools, chickens, a cow, and other items. Eighty acres of the land constituted decedent's homestead. While the estate was in administration, the executor, under "proper authority" from the probate court, placed a mortgage for $2,000 upon the land other than the homestead.

At the time of trial, Josephine was 66 years old and was unable and unwilling to care for and successfully operate the property. She had been in possession of the property continuously since her husband's death. By reason of her failure to maintain and repair the same, the buildings and fences were in a condition of serious disrepair. She failed to keep the buildings insured. Quack grass, thistle, and other foul weeds were permitted to infest and depreciate the value of the farm, which if properly managed had a rental value of about $1,100 per year, but in the condition described was only $600 to $800.

Josephine became involved in serious and expensive lawsuits over rental contracts and other matters pertaining to the management and operation of the property. On May 12, 1942, all the land except the homestead was sold under execution to one Lewis L. Anderson for $1,019.60 to satisfy a judgment recovered by him against Josephine for attorneys' fees and expenses in various lawsuits. The time to redeem from the sale was less than three months from the day of trial. She had taken no steps to effect a redemption and, so far as appears, was unable to do so.

On October 2, 1942, the land, except the homestead, was sold at mortgage foreclosure sale for Josephine's defaults in failing to pay, as required by the mortgage, interest on the mortgage debt and taxes for the year 1941 (payable in 1942) amounting to $212.08.

She failed to take any steps to renew or extend the mortgage prior to the sale or to redeem therefrom afterward.

Her mismanagement of the farm was wilful misconduct in an attempt to defeat the remaindermen.

As a conclusion of law from the foregoing facts, the court decided that a trustee should be appointed to preserve the property for the life tenant and the remaindermen in accordance with the express wish of the testator, appointed a trustee to take charge of the property, and directed and empowered him to sell the property at the earliest possible date; to mortgage the property, including the homestead, pending the sale to raise funds with which to redeem from the execution and mortgage foreclosure sales and to pay the expenses of the proceedings; to rent the property and collect the rents until a sale should be made; and to do all acts necessary to preserve the estate. Upon a sale, the trustee was directed to deposit the proceeds in a bank and disburse them only upon order of the court. A distribution of the proceeds was directed as follows: (1) payment of any taxes due and payable upon the farm; (2) payment and satisfaction of the mortgage; (3) payment and satisfaction of the judgment of the defendant Anderson, unless said judgment was otherwise paid; (4) payment of the costs of the action and the attorney's fees allowed, and the fees of the trustee for services rendered by him under the direction of the court; (5) for the support and comfort of the defendant Josephine Beliveau during her lifetime; and (6) at her death, any remaining portion of said proceeds shall be paid to the plaintiffs in accordance with the will of Alizam Beliveau.

Allowances of attorneys' fees were made in the sum of $300 to plaintiffs' attorneys and $200 to Josephine's attorney, which the latter declined lest it prejudice her right to appeal.

Pursuant to the authority conferred by the findings and conclusions to mortgage the land or so much thereof as should be necessary for the purpose of redeeming the land from the execution and mortgage foreclosure sales, the trustee, prior to judgment, on March 25, 1943, mortgaged the land, including the homestead, in.

the amount of $4,800 to the Sibley County Bank of Henderson. The proceeds were disbursed as follows: $2,291.95 to redeem from the mortgage foreclosure sale; $1,082.78 to redeem from the sale under execution to Anderson; $434.91 to pay taxes for the years 1941 and 1942; $300 to plaintiffs' attorneys; $323.05 expenses in connection with loan, of which $150 was for attorneys' fees in an action brought to quiet title; and $225 for attorneys' fees incurred by Josephine in an action in which she had been involved. Apparently the trustee had $142.31 on hand after making the disbursements in question. The court confirmed the mortgage and the disbursement of the proceeds. Judgment was entered after the order confirming the mortgage. Included therein were the provisions in the findings and conclusions authorizing the trustee to mortgage the land.

The defendant Josephine Beliveau appeals. She claims that the court erred: (1) In appointing a trustee of all the property, including the homestead; (2) in authorizing the trustee to mortgage and sell the homestead; (3) in directing the trustee to hold the proceeds of the sale and to pay the same from time to time under the direction and control of the court for the widow's support, needs, and comfort; and (4) in allowing attorneys' fees.

The life tenant concedes that it would be for her best interests to have the property other than the homestead sold and to mortgage it pending the sale to raise funds to save it from being lost under the execution and mortgage foreclosure sales; but she strenuously objects to having the homestead sold or mortgaged and the proceeds of the sale, if there be one, held and administered by a trustee. Her argument in support of these views is that under her powers to sell and encroach on the corpus she has an absolute right of disposition of the land and the proceeds of any sale, and that as an incident thereof the testator intended to confide in her the entire management of his estate, including discretion to decide if there should be a sale in whole or in part of the lands and to what extent she should use the proceeds of any sale for her needs. She urges that testator's failure to create an express trust confirms her posi-

tion, and that the judicial appointment of a trustee with the powers mentioned denies her the rights the testator intended she should have under the will.

■ We cannot agree with appellant's contentions. She took a life estate coupled with a power to sell and to use the proceeds of any sale, including the right of encroachment upon the principal, for the specified purpose of her necessary comfort and support. Under Minn. St. 1941, § 502.09 (Mason St. 1927, § 8115)[2], in a case where, as here, there is no express trust, a grant or devise of land for life with power of disposition with remainder over creates, so far as the life tenant and the remaindermen are concerned, a conventional life estate coupled with a power of disposition with a remainder over, and, so far as creditors, purchasers, and encumbrancers of the life tenant are concerned, a fee simple. In other words, the statute does not convert a life estate coupled with a power of disposition into a fee simple estate for all purposes, but only with respect to the rights of creditors, purchasers, and encumbrancers of the life tenant. Larson v. Mardaus, 172 Minn. 48, 215 N. W. 196; 33 Am. Jur., Life Estates, Remainders, etc., §§ 27, 31; Restatement, Property, § 111. Our statute was copied from the New York statute. Ashton v. G. N. Ry. Co. 78 Minn. 201, 80 N. W. 963. In Matter of Estate of Davies, 242 N. Y. 196, 201, 151 N. E. 205, 206, the court pointed out, with respect to the rights of creditors, that the language was that the particular estate was not merely assimilated to a fee but, in the words of the statute, was "changed into a fee absolute," and consequently the estate of the debtor was to be treated as a fee absolute, and said (242 N. Y. 202, 151 N. E. 206):

"* * * The rights of creditors were made superior to any future estate limited on the debtor's particular estate. The mischief which

---

[2]The statute provides: "When an absolute power of disposition, not accompanied by any trust, is given to the owner of a particular estate for life or years, such estate shall be changed into a fee, absolute in respect to the rights of creditors and purchasers, but subject to any future estate limited thereon, in case the power is not executed, or the lands sold for the satisfaction of debts."

the statute sought to end was that sometimes refined distinctions between an estate in fee and a particular estate which gave the holder practically all the benefits of ownership in fee defeated just claims of creditors."

Where, as here, a judgment creditor causes the property to be sold under execution, the purchaser at the execution sale acquires an absolute fee title if no redemption is made from the sale, which cuts off the rights of the remaindermen. At least that is true where the sale occurs during the lifetime of the life tenant. Watkins v. French, 149 Okl. 205, 299 P. 900, 76 A. L. R. 1146, and annotation.

The proceedings to obtain leave to mortgage being substantially the same as those to obtain leave to sell, Minn. St. 1941, §§ 525.63, 525.64 (Mason St. 1940 Supp. §§ 8992-146, 8992-147, *Id.* 1927, §§ 8835, 8836), a mortgage placed upon land by an executor binds the land as against heirs and devisees for the same reasons that a sale by an administrator was held in Kietzer v. Nelson, 157 Minn. 463, 196 N. W. 641, to have that effect. Where no redemption therefrom is made, a purchaser at a mortgage foreclosure sale acquires the mortgagor's title, Tomasko v. Cotton, 200 Minn. 69, 273 N. W. 628, which here is the fee to the land mortgaged by the executor. See Larson v. Mardaus, 172 Minn. 48, 215 N. W. 196, *supra,* where we held that foreclosure of a mortgage given by the life tenant in such cases transfers the fee title to the purchaser at the foreclosure sale.

■ The life tenant's rights included those of possessing, using, managing, and selling the land and using the proceeds thereof. But these rights were qualified and were limited to her necessary comfort and support. Where the life tenant acts in good faith and not for the purpose of defrauding the remaindermen, he may in such cases encroach on and use the entire estate. He cannot, however, in the exercise of his powers of sale and encroachment use the corpus for other purposes such as giving it away, granting, or devising it; nor waste or squander it in profligate living. Under a general power to sell and encroach, as here, the determination of the necessity for a sale and the amount to be used by the life tenant for his comfort and needs rests entirely in his honest judgment and

discretion, uncontrolled and unlimited by the courts, in the absence of bad faith or fraud. Annotations, 2 A. L. R. 1285; 27 A. L. R. 1384; 69 A. L. R. 830; and 114 A. L. R. 951. The life tenant's discretion is not, however, without limits.

"* * * So long as a life tenant exercises a discretion within the law, and confines his use of the principal to so much as may be necessary for his support in a manner suitable to his station and condition of life, as disclosed by the circumstances of each case, his discretion cannot be interfered with by the courts. Even though, for the time being, the life tenant exercises his judgment, he is not, however, the sole and ultimate judge of what is necessary. A court of equity, and perhaps in some cases the probate court, will review and revise his judgment and determine whether the contingency has arisen so as to give him any right to resort to the principal, and, if so, whether he has exceeded the liberty given him. If the life tenant acts within the legal limits of a necessity in law, he may not be responsible. He is responsible, however, if he appropriates a portion of the principal when not needed for his support, indulges in wastefulness, or seeks to appropriate to his own use more of the estate than is reasonable for his support." 33 Am. Jur., Life Estates, Remainders, etc., § 252, p. 735.

There is a community of interest between a life tenant and a remainderman which gives rise to obligations and duties as between them. Turner v. Edwards, 207 Minn. 455, 292 N. W. 257; Hall v. Hall, 173 Minn. 128, 216 N. W. 798; Whitney v. Salter, 36 Minn. 103, 30 N. W. 755, 1 A. S. R. 656. By implication, a life tenant is a *quasi* trustee of the property in the sense that he cannot injure or dispose of it to the injury of the remainderman, even though a power of disposition and encroachment are annexed to the life estate. Mallett v. Hall, 129 Me. 148, 150 A. 531; Joyce v. Gunnels, 2 Rich. Eq. (S. C.) 259; 31 C. J. S., Estates, § 34; Annotation, 137 A. L. R. 1054.

It was the duty of appellant as a life tenant not to permit waste, to make necessary and reasonable repairs, to pay current taxes, to pay the interest on the mortgage, and not to permit noxious weeds

to infest the lands to the injury of the freehold. We do not decide whether the life tenant was under a duty to insure the property for the benefit of the remaindermen. The rule seems to be that she was under no such duty. 31 C. J. S., Estates, § 46; see Rendahl v. Hall, 160 Minn. 502, 200 N. W. 744, 940. Her failure to pay the taxes and make necessary and reasonable repairs of the building and fences constituted waste. St. Paul Trust Co. v. Mintzer, 65 Minn. 124, 67 N. W. 657, 32 L. R. A. 756, 60 A. S. R. 444. While there is some conflict among the authorities, we think the better rule is that a life tenant commits waste by permitting farm lands to become infested with noxious weeds which do injury to the freehold. Jeffreys v. Hocutt, 195 N. C. 339, 142 S. E. 226; contra, Lee v. Weerda, 124 Wash. 168, 213 P. 919. Such acts not only constitute ill husbandry but also injury to the land itself.

Her failure to pay the interest on the mortgage, for which default the mortgage was foreclosed and the property placed in danger of being lost, not only to her but also to the remaindermen, was in violation of her duties as the life tenant. In re Application of Lee, 171 Minn. 182, 213 N. W. 736; In re Estate of Roberts, 166 Minn. 315, 207 N. W. 629.

Her failure to discharge her indebtedness to her attorney, Mr. Anderson, or, in lieu thereof, to raise sufficient money for the purpose, by exercising her power to sell, in consequence of which he procured a judgment and caused an execution to issue thereon under which the property was sold and was in danger of being lost to all concerned, also constituted a breach of her duties and obligations to the remaindermen.

The exigencies brought to pass by appellant's conduct with respect to the property justified the intervention of equity to preserve the property not only for the remaindermen but also for the appellant as the life tenant and to protect the interests of all. We are bound to accept as verities the findings of fact, because the case is here without a bill of exceptions or settled case and because appellant does not challenge the findings. Gunderson v. Hoff, 167 Minn. 413, 209 N. W. 37; Mascall v. Reitmeier, 145 Minn. 214, 176

N. W. 486. The inferences drawn by the trial judge from the situation of the property and the interested parties as to the extent of the sale required to afford protective relief is one of fact, which is final upon such a record. In Matter of Estate of Steward, 1 Cal. App. 57, 81 P. 728; 34 C. J. S., Executors and Administrators, § 584, p. 545. The absolute futility of attempting to review the court's finding that it was necessary to sell all the property, including the homestead, appears as a practical matter, because the values of the lands, either en masse or as separate tracts, do not appear, with the consequence that there is no way of telling if less than all, and if so what, tracts should be sold; because the relation of the separate tracts to each other does not appear, except that the main body of land is rather long from east to west and narrow from north to south and that two of the lots comprising about 80 acres are along the Minnesota River and so far as we know may consist to a considerable extent of bottoms or bluffs, a factor which might affect their value; because the lands comprising the homestead have not been identified; and because we have no way of determining the advisability or practicability of selling the various tracts separately.

Consequently, we accept as final the findings of fact that, in breach of her duties as *quasi* trustee to the remaindermen, appellant, as life tenant, has committed permissive waste as to all the lands, including the homestead, in failing to pay taxes, make necessary and reasonable repairs to buildings and fences, and, by permitting the lands to become infested with noxious weeds, caused injury to the freehold, and that it was necessary to sell all the property and to appoint a trustee to hold and manage the proceeds of the sale. With respect to the lands other than the homestead, because of her default and breaches of duty, there was imminent danger that the title thereto would be lost in less than three months after the trial by becoming absolute in Anderson, as purchaser at the execution sale under the judgment procured by him as the life tenant's creditor, and that there was the further danger that the property would be lost under the mortgage foreclosure sale in

less than ten months after the trial unless a redemption therefrom was made. In addition thereto, it appeared that in the course of time all the property would be lost for the nonpayment of taxes also.

Where, because of an exigency endangering the rights of the owners of property given in present and future interests, it is necessary to preserve the property and to protect such interests, courts have inherent equitable jurisdiction to order a judicial sale of the entire fee, and to appoint a trustee to conduct the sale and to reinvest the proceeds of the sale for the benefit of the holders of the respective interests in the property sold. Graff v. Rankin (7 Cir.) 250 F. 150; Reed v. Alabama & G. Iron Co. (C. C.) 107 F. 586; Thompson v. Adams, 205 Ill. 552, 69 N. E. 1; Gavin v. Curtin, 171 Ill. 640, 49 N. E. 523, 40 L. R. A. 776; Coquillard v. Coquillard, 62 Ind. App. 489, 113 N. E. 481; Bofil v. Fisher, 3 Rich. Eq. (S. C.) 1, 55 Am. D. 627; Farris v. Harrison, 8 Tenn. (Ct. of Civ. App.) 74; 33 Am. Jur., Life Estates, Remainders, etc. § 265. Neither the absence of an express trust in the instrument creating the present and future interests nor of statutory authorization for the judicial creation of a trust in such cases is any obstacle to such relief.

The rule is said to be one of American origin and development, for which there are no English precedents. But the absence of precedents is, as the court pointed out in Gavin v. Curtin, *supra,* no reason for not applying well-settled principles of equity. A court of equity has the power to adapt its decree to the exigencies of each particular case so as to accomplish justice. It is traditional and characteristic of equity that it possesses the flexibility and expansiveness to invent new remedies or modify old ones to meet the requirements of every case and to satisfy the needs of a progressive social condition. Union P. Ry. Co. v. C. R. I. & P. Ry. Co. 163 U. S. 564, 16 S. Ct. 1173, 41 L. ed. 265. Equity has not been rendered entirely inflexible by the precedents of bygone ages. See Walsh, "Is Equity Decadent?", 22 Minn. L. Rev. 479. Just as courts may erect constructive trusts as remedial devices to enable them to do justice in particular cases, they may create trusts having all the characteristics of an express trust to do justice in a particular

case. The judicial creation of a trust to afford an adequate remedy, where there otherwise would be none, for a right is but a manifestation of equity's capacity to grow and to fit its remedies to the demands of justice in the particular case. It is justified under the maxim that where there is a right there is a remedy. Gavin v. Curtin, *supra;* 2 Pomeroy, Equity Jurisprudence (5 ed.) §§ 423, 424; 3 Simes, Law of Future Interests, § 789; Schnebly, "Power of Life Tenant or Remainderman," 42 Harv. L. Rev. at p. 54, *et seq.;* Simes, "Fifty Years of Future Interests," 50 Harv. L. Rev. at p. 760, *et seq.*

A sale extinguishes the rights of the parties in the land itself, but otherwise they are preserved. The rights of the parties in the land are transferred to the proceeds of the sale. In Mayall v. Mayall, 63 Minn. 511, 514, 65 N. W. 942, 943, where there was an express trust but no power of sale, we said of a sale ordered as an exercise of the inherent equitable powers of the court:

"* * * The power of the court is exercised, not to defeat or destroy the trust, but to preserve it. Even in case of an absolute sale, the trust is not destroyed. * * * The proceeds are impressed with the trust, and are to be administered in accordance with its terms, under the direction of the court."

See Robinson v. Barrett, 142 Kan. 68, 45 P. (2d) 587; Rasmusson v. Schmalenberger, 60 N. D. 527, 235 N. W. 496. The fund, being a substitute for the land and subject to the same rights, will be administered as nearly as possible as the land would have been handled had there been no conversion. Mayall v. Mayall, *supra;* Coquillard v. Coquillard, 62 Ind. App. 489, 113 N. E. 481, *supra;* Rasmusson v. Schmalenberger, *supra;* Des Champs v. Mims, 148 S. C. 52, 145 S. E. 623; Wilder v. Cox (Tex. Civ. App.) 104 S. W. (2d) 897; see Ruggles v. Tyson, 104 Wis. 500, 79 N. W. 766, 81 N. W. 367; 48 L. R. A. 809. The trustee, therefore, will hold the proceeds of any sale impressed with the same rights as the land itself. Appellant has the same right to encroach on the proceeds of the sale in the hands of the trustee which she would have had if she had exercised the power of sale and held the funds herself. The amount

which she may use for her needs and comfort is not involved in this litigation. It will be time enough to pass on that question after the trustee or the court below has limited the exercise of her discretion with respect to that mâtter.

The fact that part of the land was the testator's homestead does not affect the power of the court to order it sold. St. Paul Trust Co. v. Mintzer, 65 Minn. 124, 67 N. W. 657, 32 L. R. A. 756, 60 A. S. R. 444, 32 L. R. A. 756; Baldrige v. Coffey, 184 Ill. 73, 56 N. E. 411; Upham v. Plankinton, 166 Wis. 271, 165 N. W. 18. Of course, so far as the exercise of discretion is concerned, homestead rights should be respected, and a homestead should not be sold except in extreme cases. But the question whether the court properly exercised its discretion is foreclosed, as has been pointed out, because of the scope of our review on this record. We can pass only on the question of power, because that is the only question raised by appellant. On that point our decision must be against her.

An exigency did exist here. All the lands were being wasted and deteriorated and were about to be lost to the parties concerned. Interposition was necessary to save them for both the life tenant and the remaindermen.

In most of the cited cases the appointment of a trustee and a sale with subsequent reinvestment were decreed at the instance of the life tenant as against remaindermen without fault. Here the proceedings are at the instance of the remaindermen, who stand in a stronger position than the life-tenant plaintiffs in the cited cases, because the appellant here, as the life tenant, by her breaches of duty as a *quasi* trustee for the remaindermen, has created the exigency which is wasting the property and threatens the complete loss of it to all concerned. When the testator created the present and future interests, he assumed that no such exigency would ever arise and that in due time, if any part of his estate remained, the remaindermen should have it. The breaches of duty by appellant as a *quasi* trustee resemble those of a trustee under an express trust. In both cases, termination of the trustee's powers and the appointment of a successor are justified. In that limited sense the

judicial appointment of a trustee is tantamount to the removal of appellant as a *quasi* trustee and the appointment of a successor to execute the trust created by the testator.

In the instant case the results have justified the remedy. The appointment of a trustee and the placing of a mortgage on the property afforded the urgent and necessary relief which saved the property from being entirely lost and which protected the interests of all parties in the property.

■ The last question concerns the allowance of attorneys' fees to the parties. Of course attorneys' fees are not allowable in an ordinary action. Johanson v. Lundin Bros. 144 Minn. 470, 175 N. W. 302. Where, however, the action is a suit in equity to save or preserve property, attorneys' fees and other expenses may be allowed. Regan v. Babcock, 196 Minn. 243, 264 N. W. 803. Where a sale of land is decreed in equity to preserve the rights of the owners of present and future estates by converting the land into a fund, attorneys' fees may be allowed. Matter of Roosevelt, 131 Misc. 800, 805, 228 N. Y. S. 323, 329, where the court said:

"* * * it is well settled that a court of equity has inherent powers to make an allowance for expenses, including counsel fees, out of a fund that has been benefited and protected by one or more persons acting not merely for themselves but as 'quasi trustees' for the benefit of many others interested in the same fund." See 31 C. J. S., Estates, § 53.

Our conclusion is that the judgment should be affirmed. Nothing is decided with respect to the amounts of the proceeds of the sale which appellant is entitled to appropriate for her needs and support. If any controversy should arise with respect to that matter, the court below will be guided by what we have already said.

Affirmed.

Mr. Justice Streissguth, having been of counsel below, took no part in the consideration or decision of this case.