## STATE v. KENNETH LESLIE JENSEN.

174 N. W. (2d) 226.

January 30, 1970—No. 41251.

C. Paul Jones, State Public Defender, and *Robert E. Oliphant* and *Roberta K. Levy,* Assistant State Public Defenders, for appellant.

*Douglas M. Head,* Attorney General, *George M. Scott,* County Attorney, and *Henry W. McCarr, Jr.,* and *Theodore R. Rix,* Assistant County Attorneys, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Peterson, and Frank T. Gallagher, JJ.

Nelson, Justice.

Defendant appeals from an order of the district court which held that the state had maintained its burden of proof that the defendant was competent to stand trial in 1965 on a charge of burglary.

Defendant-appellant, Kenneth Leslie Jensen, was charged with having committed a burglary on March 16, 1965, contrary to Minn. St. 609.58, subd. 2(3), and was tried in Hennepin County District Court and convicted by a jury on July 1, 1965. Immediately before the court was to impose sentence, defendant informed the trial judge that he had been released from the Anoka State Hospital shortly before the burglary occurred. His sentencing was thereby deferred until July 7, 1965, at which time he was sentenced to an indeterminate 5-year term.

On November 3, 1965, the Hennepin County probate court had before it a September 23, 1965, classification summary prepared by a state psychiatrist which concluded that defendant was a "hard-core psychopath, possibly psychotic, who just doesn't fit any place, not even in a Reformatory." The probate court then vacated an order it had made on October 31, 1963, which trans-

ferred defendant from the St. Peter Security Hospital to the Anoka State Hospital for the mentally ill as no longer dangerous. It determined that defendant's conduct while on provisional discharge from Anoka showed him to be dangerous and ordered him confined to the St. Peter Security Hospital. On December 3, 1965, one month after his transfer, the probate court determined that defendant had sufficiently recovered so that he could resume his incarceration at the reformatory. However, the court ordered him remanded to the St. Peter Security Hospital at such time as he became eligible for release from the reformatory.

An appeal from his conviction was taken to this court, and the case was thereupon remanded with an order that defendant have a new trial unless the state established within 60 days of the filing of the decision by clear and convincing evidence that defendant was fully competent to stand trial at the time of his 1965 conviction. State v. Jensen, 278 Minn. 212, 153 N. W. (2d) 339.

On November 28, 1967, the state began proceedings before the Hennepin County District Court to determine whether defendant was competent at the time of his trial. At the outset of that hearing, the state requested the court appoint a psychiatrist to examine defendant so that an opinion could be rendered concerning his mental status. Defendant's counsel objected to the request on the ground that any statements given by defendant to a psychiatrist would be privileged. Counsel asserted that defendant would not waive the doctor-patient privilege. Defendant's counsel also objected to the state's intention to call the attorney who had represented defendant at the 1965 trial, asserting that defendant would not waive his attorney-client privilege. The district court overruled both objections. Defendant's counsel also objected to the appointment of one Dr. Robert P. Jeub as the examining psychiatrist on the ground that he had previously examined defendant and therefore was privy to confidential communications. The district court denied defendant's request that an impartial psychiatrist be appointed.

At a hearing held December 1, 1967, the state produced the Honorable Crane Winton; the late Judge John A. Weeks; Syrus S. Kouri, the attorney who represented defendant at his 1965 trial; Steven Lange, an attorney who prosecuted defendant in 1965; and Dr. Jeub, psychiatrist, as witnesses in its effort to show that defendant was competent to stand trial in 1965.

Judge Winton testified that he was the municipal court judge who presided at defendant's 1965 preliminary hearing; that defendant was present and represented by counsel; and that he noted nothing unusual in defendant's demeanor or appearance during the proceeding. Upon cross-examination Judge Winton stated he was unable to recognize symptoms of mental illness in the defendant.

Judge Weeks, who presided at defendant's 1965 trial, testified that during the period he observed defendant he manifested no unusual behavior. He stated that he believed defendant comprehended questions put to him by his counsel while he was on the stand testifying in his own behalf. Judge Weeks said that he first became aware of defendant's prior mental condition just before he was about to sentence him. He also said that defendant appeared to be aware of everything that was transpiring and was able to confer and cooperate with his counsel. He admitted, however, his inability to make an independent determination regarding the competency of the accused from any courtroom observation.

Mr. Syrus S. Kouri, counsel for defendant at the 1965 trial, stated that he would be unable to divorce confidential information given to him by defendant from expressions and other behavior manifestations on defendant's part when answering questions regarding defendant's demeanor. Nevertheless, he was required to testify. He testified that defendant appeared normal and evinced no signs of mental aberration or deficiency during the time he represented him. He said that he consulted with defendant concerning the case and discussed trial tactics with him.

He also stated that he first became aware of defendant's alleged incompetence when the court was about to impose sentence.

Steven Lange was also a state's witness. He testified that he prosecuted defendant in 1965 for burglary and recalled nothing unusual about defendant's appearance or demeanor.

The state's final witness was the court-appointed psychiatrist, Dr. Robert P. Jeub. He was appointed by the court on November 28, 1967, to make an examination in order to render an opinion regarding defendant's mental state at the time of the 1965 proceedings. He testified that he read the probate court file and interviewed Judge Weeks and Judge Winton. He also reviewed defendant's Hennepin County General Hospital chart, which went back to 1960, and finally, he interviewed defendant for about an hour on November 29, 1967. Dr. Jeub recalled that in 1960 he interviewed defendant for the probate court and saw him again in 1963. In 1960 defendant was adjudicated dangerous to himself and others and was sent to the security hospital at St. Peter. Dr. Jeub stated that in his opinion defendant was experienced in playing games, stalling, taking up time, and evading questions. Furthermore, defendant was very lucid at times but was also given to serious psychiatric disorder at other periods; that the schizophrenic reaction, paranoid type personality disorder discovered in 1960, still afflicted defendant. He concluded that it was his opinion that defendant was competent to intelligently participate in his own defense in 1965.

Defendant presented no witnesses and did not testify. The district court ruled that the state had established by clear and convincing evidence that defendant was competent to stand trial at the time of his 1965 conviction.

This appeal presents the following issues: (1) Did the state establish by clear and convincing evidence that defendant was fully competent to stand trial at the time of his conviction? (2) Did the court err in allowing defendant's counsel to testify on behalf of the state? (3) Was the psychiatrist who testified for

the state foreclosed from testifying because of the doctor-patient privilege?

■ While defendant concedes the admissibility of the testimony of Judges Weeks and Winton and Mr. Lange, he contends that their testimony carries little weight for the reason that these witnesses never developed a prolonged and intimate contact with defendant so as to make an assessment of his mental capacity.

Judge Weeks, when asked if defendant manifested any unusual behavior at the 1965 trial, answered:

"No, no, he acted like a perfectly ordinary person on trial, what I would designate in a normal manner, except I noticed he did actively participate in cooperating with his lawyer by conferring and suggesting things to him, and on occasions he went to the back of the courtroom and conferred with people there who I assume were either friends or witnesses."

Judge Weeks further testified that it was his observation that defendant was "perfectly competent to stand trial and showed a great deal of competency" and that "he seemed perfectly aware of everything that was transpiring and was able to confer and cooperate with counsel."

Mr. Kouri, who was defendant's choice of counsel at the 1965 trial and sentencing, made several additional court appearances with defendant as well as being in his presence in preparing for trial and consulting extensively with him concerning trial strategy and tactics. Asked what observations he had made as to defendant's appearance and demeanor, Kouri answered:

"To my observations, according to the best of my recollection, he appeared normal and there was no outward indication that would lead me to suspect any type of mental aberration or deficiency."

Dr. Jeub testified that in addition to thoroughly reviewing defendant's longitudinal and cross-sectional history and otherwise investigating this case, he listened to the testimony of other witnesses in this matter. When asked if, based upon this investiga-

tion, defendant had capacity at the time of his trial to understand the criminal proceedings brought against him and to participate in his defense, Dr. Jeub answered affirmatively and stated that it was his belief that defendant was competent. Upon being asked how his examination of the files in this case substantiates an individual who is competent, Dr. Jeub gave the following response:

"* * * This is a very easy thing. The fact is this, that a person who has a mental disorder or is mentally ill or incompetent shows unusual relationships between his environment and the things going on about him. That is number one. Number two, they frequently do show evidence of what we call psychomotor retardation, or even to the point of what we call pseudo catatonic stupor. These individuals are occasionally blocked, extremely vague, they sometimes are split personalities, so to speak, and they are preoccupied with things that are removed from their environment. I was unable to find any evidence of these things by examining these—this file; and the references that I do find to a condition such as this is in his 1960 Hennepin County file, at the time that he was found to be a mentally ill person."

We observe from the record that the real impact of the testimony of the other witnesses becomes most apparent when considered in the context of the testimony of Dr. Jeub. This appears to cause a true picture of a clearly competent individual to emerge.

More recently defendant caused to be attached to his petition for a rehearing on restoration to capacity and discharge of detainer an opinion and report of Dr. Leslie Caplan, consulting psychiatrist, St. Cloud Reformatory, whose psychiatric evaluation of defendant was requested in connection with that petition. A reading of that report thoroughly refutes defendant's claim of incompetence. In fact, the report of Dr. Caplan reveals the expertise of defendant in the art of deception whenever it suits his purpose.

The comments of the trial judge in finding that the state

proved defendant competent to stand trial by clear and convincing evidence underscores the success of the state in meeting its burden:

"* * * It is not whether he was insane then, it is not whether he was psychotic then, but it is whether he was at that time under the statute capable of understanding the nature of the proceedings in which he was involved and cooperating in making a defense, and everything that I have read in the file and everything I have heard, including the testimony of Dr. Jeub—I am not basing my decision exclusively on that testimony—leads me to the conclusion that the State has established that he was capable of understanding the nature of the proceedings against him and he was capable of cooperating in his defense."

■ The attorney-client privilege does not apply to Mr. Kouri's testimony in the instant case. Such privilege attaches only when the communications are made in confidence. See, State v. Lender, 266 Minn. 561, 124 N. W. (2d) 355; Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535. The prosecuting attorney was merely interested in eliciting from the witness information as to observations he made as to defendant's appearance and demeanor. The trial judge properly overruled the objection to this testimony since the witness was not being asked to disclose any communications. The witness' observations of his client are simply not communications.

■ The doctor-patient privilege is not available to defendant for several reasons. In the first place, the state psychiatrist never attended defendant for the purpose of diagnosis and treatment. See, Minn. St. 595.02(2, 4).

In State v. Emerson, 266 Minn. 217, 223, 123 N. W. (2d) 382, 386, this court said:

"Where a medical examination is for some reason other than diagnosis and treatment, we have held the privilege does not obtain. The rule is stated in 8 Wigmore, Evidence (McNaughton Rev.) § 2383, thus:

" 'The privilege is intended (and by most statutes is declared) to protect only those communications which are *necessary* for obtaining the benefits of the professional relation—in other words, for enabling the physician to prescribe remedies or relief.' "

A careful reading of the testimony of Dr. Jeub, appearing for the state, leaves little doubt but that his relationship with defendant was not a professional one.

McCormick, Evidence, § 102, makes the following observation:

"\* \* \* Usually, however, when the doctor is employed by one other than the patient, treatment will not be the purpose and the privilege will not attach. Thus, when a doctor is appointed by the court or the prosecutor to make a physical or mental examination \* \* \* the information secured is not within the present [doctor-patient] privilege."

See, also, A. L. I., Model Code of Evidence, Rule 209.

A summary by the state in its brief appears to have made a pertinent overall observation in the approach to defendant's defense in both instances herein referred to:

"The Appellant's history is one of a convenient, self-serving flexibility. He alternately pleads competency and incompetency, whichever claim is best tailored to serve his immediate interests. When his hope was for acquittal, he was competent. When faced with a jury's finding of guilt, he claimed incompetence. When he contested the State's proof of capacity at the remand hearing, he again pictured himself as a leading candidate for psychiatric care. Just months later, in petitioning for restoration to capacity, he vigorously disclaimed any symptoms of mental illness."

After reviewing the record of the remand proceedings, we are convinced that there is ample support to affirm the lower court's ruling as to defendant's competency.

Affirmed.