**In re the Marriage of Alice M. DORWEILER, Petitioner, Respondent,**

v.

**Joseph B. DORWEILER, Appellant.**

**No. C2–87–704.**

Court of Appeals of Minnesota.

Oct. 13, 1987.

Scott T. Johnston, Michael J. Dolan, Thornton, Hegg, Reif, Johnston & Dolan, Alexandria, for petitioner-respondent.

Jon K. Dalager, Fluegel, Anderson, Dalager, Dalager & Seibel, Morris, for appellant.

Heard, considered and decided by LANSING, P.J., and RANDALL and CRIPPEN, JJ.

## OPINION

LANSING, Judge.

Joseph Dorweiler appeals from the denial of his alternative motion for amended findings or a new trial in a marital dissolution action. He claims the trial court erred in categorizing marital and nonmarital property and abused its discretion in dividing the property and granting spousal maintenance. We affirm in part and reverse and remand in part.

## FACTS

Alice and Joseph Dorweiler were married in 1970 and dissolved their marriage in 1986. Since 1973, Joseph Dorweiler, 47, has been self-employed as an auto mechanic. In 1985 he earned $18,282.99 net profit from the business.

Alice Dorweiler, 57, worked at her husband's business from 1973 to 1985. She kept the books, delivered parts, assisted customers and cleaned the station. She earned $5,272.90 in wages for 1985. After the couple separated, she began working at the West Central Credit Bureau in Glenwood as a bookkeeper and secretary and currently earns a net income of $370 per month.

In 1973 the Dorweilers purchased a home and a small parcel of land for $11,250. For the $2,250 downpayment, they used a 1972 joint gift of $2,000 from Alice Dorweiler's parents and part of a 1973 individual gift to Alice of $1,500. They spent an additional $571.88 of the 1973 gift for repairs. The couple made numerous other improvements to the home and purchased a garage and an additional tract of land.

During the marriage the Dorweilers received a total of $40,000 in cash gifts from Alice's father. From 1972 to 1982, her father wrote checks to Alice totaling $17,000. He gave $3,000 to the couple jointly in 1974 and wrote Alice and Joseph Dorweiler each a check for $10,000 in February 1985.

In the dissolution decree Alice Dorweiler received physical and legal custody of their minor son and $300 per month child support. She also received $150 per month spousal maintenance, to increase to $400 per month when the child support terminated. The maintenance continues until her remarriage or April 30, 1993, whichever occurs first.

In dividing the marital property, the court awarded Alice Dorweiler $8,662.09 in personal property, $7,020.72 of the couple's marital cash savings, $10,000 given to Joseph by her father in 1985, and the homestead, worth $34,000 at the time of trial, for a total of $51,522.81. She also received non-marital assets which included 24 percent of the homestead, or $8,160, and $37,257.12 of cash savings, the present value of

the gifts from her father. Her total award, including marital and nonmarital property, amounted to $96,939.93 in cash and property.

Joseph Dorweiler received $29,135.51 in marital assets, which included the assets of the auto service business, guns acquired during the marriage, and $12,387.30 of the couple's cash savings, for a total of $41,522.81. His nonmarital assets included a Honda motorcycle, three guns, and the cash value of one of the couple's four insurance policies, $876.49. His total property settlement came to $42,399.30, plus his nonmarital assets and the undetermined goodwill value of his business.

Joseph Dorweiler moved alternatively for amended findings of fact or a new trial. The trial court denied his motion for a new trial, but partially granted the request for amended findings by awarding him various personal marital items not provided for in the previous order. Joseph Dorweiler appeals.

## ISSUES

1. Did the trial court err in categorizing the parties' marital and nonmarital property?

2. Did the trial court abuse its discretion in dividing the property characterized as marital property?

3. Did the trial court abuse its discretion in granting temporary spousal maintenance?

## ANALYSIS

### I

Joseph Dorweiler claims the trial court erred (1) in classifying 24 percent of the parties' homestead as Alice Dorweiler's nonmarital property; and (2) in concluding that most of the money received as gifts from Alice Dorweiler's father was intended for her alone and constituted nonmarital property.

### A. *Homestead*

■ The burden of establishing the nonmarital character of an asset acquired during the marriage is on the party claiming the property as nonmarital. Minn.Stat. § 518.54, subd. 5 (1986); *Van de Loo v. Van de Loo*, 346 N.W.2d 173, 177 (Minn.Ct. App.1984). That party must establish that the gift was intended by the donor to be a gift to only one of the spouses. *See Svoboda v. Svoboda*, 376 N.W.2d 755 (Minn.Ct. App.1985).

The trial court concluded that 24 percent of the homestead was Alice Dorweiler's nonmarital property because the $2,250 downpayment and $571.88 in repairs were from nonmarital gifts. Added together, those amounts represent approximately 25 percent of the purchase price of $11,250.

■ Testimony at trial established that the source of the downpayment was a gift from Fred Tigges, Alice Dorweiler's father. Although the $2,000 check was made out to Alice Dorweiler, she testified that "my parents gave us a check in 1972 for $2,000." Based on this undisputed testimony, $2,000 of the $2,250 should properly be categorized as marital property.

We do not disturb the trial court's finding of $34,000 as the current value of the homestead. However, this figure must be reduced by the $571.88 in repairs made by the parties in 1973 and the cost of other improvements made by the parties before computing Alice Dorweiler's appreciated interest on her net equity.[1]

■ A party's nonmarital interest in a homestead which increased in value during the marriage should represent the proportion his or her net equity bore to the original purchase price. *Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn.1981). However, the *Schmitz* formula applies only to the appreciation of property not attributable to improvements made by the parties.

---

1. We note that much of the $571.88 was spent on items not considered capital improvements, e.g., fuses, bathmats, paint, carpet cleaning and tools. However, because Joseph Dorweiler did not raise this issue in his motion for a new trial, we do not consider it here. *See Tasker v. Tasker*, 395 N.W.2d 100, 103 (Minn.Ct.App.1986) (citing *Sauter v. Wasemiller*, 389 N.W.2d 200, 201 (Minn.1986)).

*See Faus v. Faus,* 319 N.W.2d 408, 412 (Minn.1982). Improvements made by the parties are presumed to be marital property. *Id.*

In arriving at her nonmarital percentage of the homestead, the trial court multiplied 24 percent by the home's $34,000 fair market value and arrived at $8,160. Although Joseph Dorweiler testified that the parties spent considerable time and money on improvements to the property, the court did not consider these improvements in calculating the appreciation of Alice Dorweiler's nonmarital interest.

■ Proper calculation of Alice Dorweiler's current nonmarital interest in the homestead requires that the court first divide her nonmarital contribution to the downpayment by the purchase price of the house. Next, the cost of repairs and improvements must be subtracted from the current value of the house in order to determine the increase in value of the property due solely to appreciation. *See Faus,* 319 N.W.2d at 412. Finally, the net appreciated value of the house must be multiplied by the ratio of nonmarital net equity to purchase price in order to determine Alice Dorweiler's nonmarital interest in the homestead.

### B. *Gifts*

■ Property acquired during marriage is presumed to be marital whether title is held individually or by the spouses in a form of co-ownership, Minn.Stat. § 518.54, subd. 5 (1986), and the party seeking to prove that property is nonmarital must do so by a preponderance of the evidence. *Ranik v. Ranik,* 383 N.W.2d 431, 434 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 22, 1986).

■ The court awarded Alice Dorweiler as nonmarital property all of the money received from her father. Joseph Dorweiler does not dispute that the checks were received as gifts, but argues that the court erred in awarding Alice Dorweiler a $3,000 check which was made out to the couple jointly. We agree.

The trial court's findings characterized the gift as one to both parties. However, the $37,257.12 which it awarded Alice Dorweiler as nonmarital property includes both the principal and interest on this gift. In the absence of proof that Mr. Tigges intended the $3,000 check to Joseph and Alice as a gift to Alice alone, the inclusion of that amount in Alice Dorweiler's nonmarital property award was erroneous.

■ Joseh Dorweiler also claims the trial court abused its discretion in awarding Alice Dorweiler the $10,000 check he received from her father in 1985. The trial court found the check constituted marital property, but awarded the check to Alice Dorweiler based on her testimony that her father would not have given Joseph the check had he known of the separation.

Mr. Tigges gave Joseph Dorweiler the $10,000 check as a gift, and it should have been classified as his nonmarital property. The check memo stated it was a gift, he received it from a third party, and it was addressed to him alone. *See* Minn.Stat. § 518.54, subd. 5. There is no indication that Alice's father intended the check for her, because he gave her a separate check on the same day. The trial court classified Alice Dorweiler's check as her nonmarital property. Classifying the contemporaneous check to Joseph Dorweiler as marital property was error.

### II

A court has broad discretion in dividing marital property, *Filkins v. Filkins,* 347 N.W.2d 526, 528 (Minn.Ct.App.1984), and if the division is equitable, there is no requirement that it be equal. *Stassen v. Stassen,* 351 N.W.2d 20, 23 (Minn.Ct.App. 1984) (citing *Ruzic v. Ruzic,* 281 N.W.2d 502 (Minn.1979)).

■ Alice Dorweiler received $51,522.81 in marital property, including the value of the homestead. Joseph Dorweiler received $41,522.81, plus the auto service business, which has an undetermined value as an ongoing concern. This division is not greatly disproportionate. *See Nemitz v. Nemitz,* 376 N.W.2d 243, 248 (Minn.Ct.App.

1985), *pet. for rev. denied* (Minn. Dec. 30, 1985); *Kramer v. Kramer*, 372 N.W.2d 364, 367 (Minn.Ct.App.1985), *pet. for rev. denied* (Minn. Oct. 11, 1985); *Reck v. Reck*, 346 N.W.2d 675, 678 (Minn.Ct.App.1984), *pet. for rev. denied* (Minn. Apr. 25, 1984). Some of the assets previously included in nonmarital property will be redistributed as a result of this decision. However, considering each party's income potential and opportunity to acquire capital assets, a mathematically unequal division of property is not an abuse of discretion.

### III

The trial court ordered Joseph Dorweiler to increase his monthly spousal maintenance payment from $150 to $400 when his child support obligation ceased. These payments extend until 1993. Joseph Dorweiler claims the increase is unwarranted under the facts and is an abuse of discretion.

 Spousal maintenance may be awarded if the court finds that the spouse seeking maintenance lacks sufficient property, including marital property, to provide for her reasonable needs or is unable to provide adequate self-support through appropriate employment. *See* Minn.Stat. § 518.552, subd. 1 (1986). The amount of maintenance depends on the factors set forth in Minn.Stat. § 518.552, subd. 2, but the court need not make specific findings on all of these factors. *Justis v. Justis*, 384 N.W.2d 885, 891 (Minn.Ct.App.1986), *pet. for rev. denied* (Minn. May 29, 1986).

 Alice Dorweiler contributed services to her husband's business throughout the marriage and needs financial support in order to acquire sufficient employment experience to support herself. The court determined that her reasonable monthly living costs were $918 and that she was currently earning $370 per month. Although the court did not make specific findings on Joseph Dorweiler's monthly expenses, it

did consider his 1985 income tax return, which showed a net profit of $18,282.99 from his business. Joseph Dorweiler did not provide any information showing that his needs exceeded this income.

The step increase is apparently based on the assumption that when Joseph Dorweiler is no longer obligated to pay child support, he will have additional funds to contribute to the temporary rehabilitative maintenance. We find no abuse of discretion.

Joseph Dorweiler also raises the issue of child support in his brief. This issue was not raised in his post-trial motions.[2] Even though the procedural history of this case is confused, it is clear that Joseph Dorweiler's contention has little merit, since he agreed to pay $300 per month child support in the proposed findings and conclusions he originally submitted to the trial court.

### DECISION

Affirmed in part and reversed and remanded in part.

---

**2.** Joseph Dorweiler originally appealed from the April 23, 1986, motion in C7–87–410. However, that appeal was not taken within the 90 days allowed by Minn.R.Civ.App.P. 104.01 and was dismissed by order of this court on March 31,

1987. That order did allow for this appeal from the May 19, 1986, order, since notice of the May 19 order had not been served upon Joseph Dorweiler.