**Luther YOUNGGREN, Respondent,**

v.

**Duane L. YOUNGGREN, et al., Appellants.**

**No. C7–96–334.**

Court of Appeals of Minnesota.

Nov. 26, 1996.

---

Kenneth F. Johannson, Johannson, Taylor, Rust, Tye & Fagerlund, Crookston, for Respondent.

Jeffrey W. Hane, Brink, Sobolik, Severson, Malm & Albrecht, P.A., Hallock, for Appellant.

Considered and decided by HUSPENI, P.J., and AMUNDSON and THOREEN*, JJ.

## OPINION

AMUNDSON, Judge.

Duane Younggren and Fay Ryden appeal from the denial of their motion for a new trial. Respondent filed a notice of review, raising a number of issues. We affirm.

## FACTS

Appellants Duane Younggren and Fay Ryden are the children of respondent Luther Younggren. During most of respondent's life he was self-employed as a farmer. In addition, respondent ran an aerial crop-spraying business and a trucking business. Since 1974, respondent has farmed in cooperation with his son, Duane. They maintained separate farms and accounts, but shared labor, machinery, and some expenses.

In the late 1980s, respondent started to get out of the crop-spraying and trucking businesses. He continued to farm, but became less active in the daily, physical work of the farm.

On February 24, 1992, respondent suffered a stroke while in the hospital recovering from prostate surgery. After a period of recovery in the hospital in Fargo, respondent was transferred to the local hospital and placed in a "swing" bed. "Swing" beds are used by patients awaiting placement in the nursing home facility.

Shortly after being placed in the nursing home, appellants approached respondent's attorney and inquired about the best way to take care of respondent's business affairs. The attorney recommended that respondent sign a power of attorney. The attorney drafted the document, went to the nursing home, explained it to respondent, and obtained respondent's signature. The attorney testified that respondent was alert and able to communicate.

Pursuant to the power of attorney, appellants took over the management of respondent's affairs, including operating his farm and paying his debts. Appellants visited respondent frequently and kept him informed of their actions. Respondent contends that he had no knowledge of what appellants were doing and that they never asked his permission to do anything; respondent did testify, however, that he remembered his son telling

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

him about the account (entitled "LDR account") which appellants had set up.

During this time, appellants learned that respondent had two large debts, totalling approximately $200,000. In an attempt to protect respondent's assets and still provide respondent with cash for his personal needs, appellants, in conjunction with respondent's attorney, established a long-term financial plan. The plan included the liquidation of some of respondent's old farming and air-spraying equipment. The plan also included granting respondent's land to appellants, but reserving a life estate for respondent.

Pursuant to this plan and the power of attorney, appellants began to transfer the bulk of respondent's liquid assets to themselves. The assets were placed in an account entitled the "LDF account," to which only appellants were signatories. This account was set up in May of 1993. In addition, appellants set up a separate account for respondent in his own name.

Also in May 1993, respondent signed deeds conveying his property to appellants, reserving a life estate for himself. The deeds were drafted by respondent's attorney.

At around this same time, appellants refused respondent's request for money to play the Canadian lottery. Appellants, who had now transferred most of respondent's cash to themselves, testified that they felt they had an obligation to spend that money responsibly.

In June 1993, respondent left the nursing home and moved in with his longtime companion, Grace Brown. Appellants testified that they were not informed of respondent's move until after it was complete. They further testified that it was after that move that their relationship with respondent began to deteriorate.

On September 30, 1994, respondent revoked the power of attorney. At that time, $55,128.54 remained in the LDF account. Six weeks later, appellants took the money that remained in the LDF account and applied it to respondent's outstanding debts.

In his suit, respondent claimed that the deeds and the power of attorney were signed when he was incompetent. He also claimed that appellants failed to provide an accounting and failed to return the money that remained in the LDF account after the power of attorney was revoked.

The trial court found that respondent was competent when he signed the deeds and the power of attorney. The court also found that appellants had acted properly while acting as attorneys-in-fact. Nonetheless, the trial court found that appellants had used the $55,128 for their own benefit and concluded that they had a legal obligation to return that money to respondent. Appellants' motion for amended findings or in the alternative, a new trial, was denied. This appeal followed. Respondent filed a notice of review.

## ISSUES

1. Did the trial court err in concluding that appellants had a legal obligation to return the funds remaining in the LDF account after the power of attorney was revoked?

2. Was the trial court's finding that appellants used the remaining funds in the LDF account for their own benefit clearly erroneous?

3. Was the trial court's finding that respondent was competent when he signed the deeds and the power of attorney clearly erroneous?

4. Did the trial court abuse its discretion in allowing respondent's former attorney and his physician to testify regarding his competency?

5. Did the trial court err in determining that respondent was not entitled to a jury trial?

## ANALYSIS

■ Generally, a trial court's decision to deny a new trial will not be disturbed absent an abuse of discretion. *Halla Nursery v. Baumann–Furrie & Co.,* 454 N.W.2d 905, 910 (Minn.1990). Where the trial court exercised no discretion but instead based its order upon an error of law, however, a de novo standard of review applies. *Id.*

## I. Right to Money After Revocation of Power of Attorney

Appellants argue that the trial court erred in concluding that they had a legal obligation to return the funds remaining in the LDF account after the power of attorney was revoked.

Appellants correctly note that the statute is silent as to whether an attorney-in-fact is required to return property transferred directly to himself. *See* Minn.Stat. ch. 523. They also correctly note that the statute only requires that they exercise "in the same manner as an ordinarily prudent person of discretion and intelligence would exercise in the management of the person's own affairs and shall have the interests of the principal utmost in mind." Minn.Stat. § 523.21 (1992). Appellants contend that they applied those funds to respondent's outstanding debts, which was in accordance with their statutory duties. The record indicates that the money was applied to respondent's debts. However, appellants used the funds to pay debts that were payable, but not due. The additional funds used to pay debts that were not yet due were not necessary to protect the interests of respondent. Thus, appellants were able to ensure that the money went toward something that benefitted themselves, i.e. protecting their interests as remaindermen, rather than being spent by respondent in a way that would not have benefitted them (he might have, for example, spent the money on his companion, Grace Brown). Thus, we conclude that the trial court properly determined that appellants had a legal obligation to return the funds remaining in the LDF account after the power of attorney was revoked.

## II. Appellants' Use of Funds from LDF Account

Appellants contend that the trial court erred in finding that they used the remaining funds in the LDF account for their own benefit.

A trial court's findings of fact will only be set aside if they are clearly erroneous. Findings are clearly erroneous if they are not reasonably supported by the evidence. *Citizens State Bank of Hayfield v. Leth,* 450 N.W.2d 923, 925 (Minn.App.1990).

The record indicates that appellants spent the remaining money in the LDF fund on respondent's outstanding debts, loans on his property, and property taxes. However, the record also indicates that respondent signed a warranty deed granting that land to appellants and reserving a life estate to himself.

A life tenant has a duty to pay taxes and interest on the mortgage. *Beliveau v. Beliveau,* 217 Minn. 235, 242, 14 N.W.2d 360, 364 (1944). However, those duties are part of the life tenant's obligation to serve as a "quasi trustee" of the property and prevent injury to the remainderman. *Id.* If the life tenant fails to make those payments and loses the property, he breaches his obligation to the remainderman. *Id.* at 243, 14 N.W.2d at 365.

Because appellants are the remaindermen and respondent is the life tenant, respondent's duty to pay the taxes and mortgage are to prevent injury to appellants. Thus, the trial court's finding that appellants were benefitted by those payments was not clearly erroneous.

## III. Competency

Respondent contends that the trial court erred in finding that he was competent when he signed the deeds and the power of attorney.

A person is considered competent if he has "enough mental capacity to understand, to a reasonable extent, the nature and effect of what he is doing." *Rebne v. Rebne,* 216 Minn. 379, 382, 13 N.W.2d 18, 20 (1944).

The record indicates that respondent's treating physician testified that he was alert and oriented upon his admittance to the local hospital. The physician also testified that, during respondent's stay in the nursing home, he was "oriented, could rationalize, could hold a conversation, could reason, and generally was quite alert in his surroundings." Finally, the doctor testified that at the time respondent signed the power of attorney and the warranty deed he was "completely competent."

In addition, respondent's former attorney testified that, when respondent signed the power of attorney, the attorney did not have any indication that respondent did not understand what he was signing. Respondent did not tell the attorney that he did not understand it or that he could not read it. Finally, the attorney testified that there was no doubt in his mind that respondent was competent and that the documents were exactly what respondent wanted done.

Respondent's companion testified that he could not see well and did not read unless he had a magnifying glass. She also testified that respondent only told her that he had signed some papers that allowed his children to take care of things. However, under cross-examination, she testified that respondent told her the power of attorney had been drafted just the way he wanted it.

The only testimony that respondent did not know or understand what he was signing when he signed the power of attorney and the warranty deeds came from respondent himself. Based on all the evidence we conclude that the trial court's finding was not clearly erroneous.

### IV. Testimony Regarding Competency

Respondent argues that the trial court erred in allowing his former attorney to testify as to his competency. He claims that the testimony violated the attorney-client privilege.

■ Under Minnesota law,

[a]n attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty * * *.

Minn.Stat. § 595.02, subd. 1(b) (1992). However, an attorney's observations of his/her client are not communications. *State v. Jensen*, 286 Minn. 65, 72, 174 N.W.2d 226, 230 (1970).

■ The record indicates that respondent's former attorney testified about his visits with respondent, both in the hospital and in the nursing home. The attorney testified that when he visited respondent it was difficult to determine to what extent respondent was participating in what was going on around him. The attorney further testified that when he went to see respondent in the nursing home, respondent was alert and able to hold a conversation. Thus, although the attorney did testify about the nature of their conversation, his testimony consisted primarily of his observations of respondent while they talked and thus was properly admitted.

Respondent also argues that the trial court erred in allowing his physician to testify as to his competency because appellants violated Minn. R. Civ. P. 35.03 when counsel conducted an ex parte interview with the physician before trial.

■ A patient waives his physician-patient privilege if the patient puts his physical or mental condition into controversy. Minn. R.Civ.P. 35.03. This waiver, however, only allows the opposing party to obtain access to the patient's medical records. Minn.R.Civ.P. 35.04. Defense counsel can conduct a private interview with a treating physician if "the doctor consents and if 15 days' notice and an opportunity to attend is given plaintiff." *Blohm v. Minneapolis Urological Surgeons*, 449 N.W.2d 168, 170 (Minn.1989).

■ In this case, respondent waived his medical privilege by putting his competency at issue. However, counsel for appellants violated the discovery rules by interviewing respondent's physician without informing opposing counsel. Because of the violation, respondent's counsel requested that the physician not be allowed to testify.

■ Under these circumstances, a trial court may sanction an attorney for such a discovery violation. *See* Minn.R.Civ.P. 37. Such a sanction could include a refusal to admit the evidence. However, the trial court is not required to impose sanctions. The trial court declined to do so in this case, and thus it was not an abuse of discretion to allow the physician to testify regarding respondent's competency.

### V. Jury Trial

■ Respondent contends that the issue of competency was a question of fact and should have been tried to the jury.

In actions for the recovery of money only, or of specific real or personal property, the issues of fact shall be tried by a jury, unless a jury trial is waived or a reference is ordered.

Minn.R.Civ.P. 38.01. Whether respondent lacked the capacity to execute the power of attorney or the warranty deeds is a question of fact. *See Rebne v. Rebne,* 216 Minn. 379, 381, 13 N.W.2d 18, 19 (1944).

■ The trial court concluded that the competency issue was a fact issue, but that the rescission of the deeds and the power of attorney was an equitable action. Thus, the court concluded that on the issue of whether the power of attorney and deeds were valid was an equitable action, and respondent was not entitled to a jury on those claims. The court further concluded that the claims for money damages could be heard by a jury and that, if a jury were to hear those claims, the court would use the jury in an advisory capacity on the other claims. Counsel for respondent then waived the jury trial on the claims for money damages and agreed to have the case heard by the court.

Although respondent raised the issue of competency, his claims were for rescission and an accounting for actions taken under the power of attorney, which are claims in equity. Thus, the trial court did not err in concluding that respondent was not entitled to a jury trial on those issues.

## DECISION

The trial court did not err in concluding that appellants had a legal obligation to return the funds remaining in the LDF account after the power of attorney was revoked. The trial court's finding that appellants used the remaining funds in the LDF account for their own benefit was not clearly erroneous.

The trial court's finding that respondent was competent when he signed the deeds and the power of attorney was not clearly erroneous. The trial court did not an abuse its discretion when it allowed respondent's former attorney and his physician to testify regarding his competency. The trial court

did not err in concluding that respondent was not entitled to a jury trial.

**Affirmed.**