*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0486**

In re the Marriage of: James Donald Knight, petitioner,
Appellant,

vs.

Maria Pieternella Knight,
Respondent.

**Filed May 18, 2015
Affirmed
Larkin, Judge**

Hennepin County District Court
File No. 27-FA-11-8967

Matthew J. Gilbert, Gilbert Law Office PLLC, Minneapolis, Minnesota (for appellant)

John M. Jerabek, Susan M. Lach, Tuft, Lach, Jerabek & O'Connell, PLLC, Maplewood, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**U N P U B L I S H E D   O P I N I O N**

**LARKIN**, Judge

In this appeal challenging the district court's property division following a marital-dissolution trial, appellant-husband argues that the district court (1) should have awarded husband a nonmarital interest in the parties' homestead, (2) erroneously double counted

funds that husband withdrew from the marital estate to pay attorney fees, (3) should have ruled that respondent-wife violated her fiduciary duty to husband, (4) should have ruled that wife improperly disposed of marital assets, (5) should not have ruled that husband improperly disposed of marital assets to pay his attorney fees, and (6) awarded wife an inequitably large share of the marital estate. By notice of related appeal, wife challenges the district court's valuation of a European home. We affirm.

## D E C I S I O N

Appellant James Donald Knight (husband) and respondent Maria Pieternella Knight (wife) married in 1976. Husband petitioned for marital dissolution in December 2011. The district court held a trial on the petition, and the parties submitted proposed findings of fact and conclusions of law regarding the division of their property. The district court entered a judgment and decree in September 2013. Husband moved for amended findings or a new trial, and the district court entered an amended judgment and decree in February 2014. Under the amended judgment and decree, husband received $516,810 worth of marital property and wife received $576,693 worth of marital property.

Husband appealed, asserting multiple errors. Wife filed a notice of related appeal, challenging the district court's valuation of one of the parties' properties. We address each of the parties' assignments of error in turn.

## I.

Husband contends that the district court erred by not awarding him a nonmarital interest in the parties' homestead, which he purchased before the marriage. Appellate

2

courts "independently review the issue of whether property is marital or nonmarital, giving deference to the district court's findings of fact." *Baker v. Baker*, 753 N.W.2d 644, 649 (Minn. 2008). We will reverse a finding of fact only if it is "clearly erroneous on the record as a whole." *Lund v. Lund*, 615 N.W.2d 860, 861 (Minn. App. 2000).

All property "acquired by the parties, or either of them, . . . at any time during the existence of the marriage relation between them" is presumed to be "marital property." Minn. Stat. § 518.003, subd. 3b (2014). "Nonmarital property" includes any property that "is acquired before the marriage [or] is the increase in value of [nonmarital] property." *Id.*, subd. 3b(b)-(c). Property can have "both marital and nonmarital aspects." *Schmitz v. Schmitz*, 309 N.W.2d 748, 750 (Minn. 1981). But "[w]hen nonmarital and marital property are commingled, the nonmarital investment may lose that character unless it can be readily traced." *Wiegers v. Wiegers*, 467 N.W.2d 342, 344 (Minn. App. 1991). "To overcome the presumption that property is marital, a party must demonstrate by a preponderance of the evidence that the property is nonmarital." *Antone v Antone*, 645 N.W.2d 96, 101 (Minn. 2002).

Caselaw describes variations of the "*Schmitz* formula"[1] that can be used to determine the extent of marital and nonmarital interests in assets having both marital and

---

[1] The "*Schmitz* formula" has been summarized as follows:

> The present value of a nonmarital asset used in the acquisition of marital property is the proportion the net equity or contribution at the time of acquisition bore to the value of the property at the time of purchase multiplied by the value of the property at the time of separation. The remainder of equity increase is characterized as marital property . . . .

3

nonmarital components. *See id.* at 102 (noting that "the *Schmitz* formula may be used to determine marital and nonmarital interests in property acquired during the marriage with a nonmarital down payment, as well as property acquired before the marriage," and reciting the relevant formula); *Dorweiler v. Dorweiler*, 413 N.W.2d 572, 576 (Minn. App. 1987) (describing the formula used to determine the extent of a nonmarital interest in property where the property has appreciated due to marital improvements).

The district court did not award husband a nonmarital interest in the parties' homestead. It determined that the parties' substantial renovations to the homestead and the numerous transfers of its title "diluted," "transmuted," and "commingled" husband's nonmarital interest. The district court specifically found that husband and wife had "extensively improved the homestead" during their marriage, "including remodeling and renovation and construction of additions," and that "[a]ll of these substantial improvements were paid for with marital assets and refinancing and were supported by the joint efforts of the parties." The district court concluded that "the nature and extent of marital remodeling, improvements, and additions to the homestead supports a reasonable conclusion that the improvements have increased the value of the homestead and have diluted the husband's nonmarital percentage."

Although husband asked the district court to determine his nonmarital interest in the parties' homestead using the *Dorweiler* formula, it did not do so. It found that there was "no reliable evidence of the value of the house on the date of marriage," which must

---

*Brown v. Brown*, 316 N.W.2d 552, 553 (Minn. 1982).

4

be known to calculate the current value of a nonmarital interest under *Dorweiler*. *See Dorweiler*, 413 N.W.2d at 576 (describing formula). The district court received husband's appraisal by Clark Goset, who opined regarding the property's value on the date of the marriage in 1976 and on the 2012 dissolution valuation date. The district court did not make an express finding regarding Goset's 1976 valuation, but it found his 2012 valuation "flawed" for three reasons: (1) the district court disagreed with Goset's opinion that the property's "highest and best use" was as a vacant lot, (2) Goset relied on a report that the district court had deemed unreliable, and (3) Goset inconsistently calculated the square footage of the parties' house and the comparable listings. Given the district court's express rejection of Goset's 2012 valuation and its finding of "no reliable evidence" regarding the value of the home on the date of the marriage, we infer that the district court rejected Goset's appraisal in its entirety, including his opinion regarding the value of the homestead on the date of marriage.

Because husband had the burden to trace his nonmarital interest in the homestead and failed to establish the value of the homestead on the date of marriage, which is a necessary component of the *Dorweiler* calculation, he failed to meet his burden. The district court therefore did not err by refusing to determine and apportion a nonmarital share of the parties' homestead to husband under *Dorweiler*. *See Eisenschenk v. Eisenschenk*, 668 N.W.2d 235, 243 (Minn. App. 2003) ("On appeal, a party cannot complain about a district court's failure to rule in her favor when one of the reasons it did not do so is because that party failed to provide the district court with the evidence that

would allow the district court to fully address the question."), *review denied* (Minn. Nov. 25, 2003).

## II.

Husband contends that the district court erroneously double counted his use of marital funds to pay his attorney fees. The district court determined that husband violated a prior district court order by failing to repay approximately $40,000 that he impermissibly acquired through use of the parties' home equity line of credit (HELOC). In the dissolution judgment, the district court ordered husband to repay that amount to wife because the judgment made wife responsible for payment of the HELOC. In a separate section of the judgment, the district court reduced the equalizer payment from wife to husband by $30,000 to "take[] into account husband's excessive use of marital funds for attorneys' fees."

Husband's double-counting argument is based on his assertion that the district court found that he used the $40,000 from the HELOC to pay his attorney fees. The district court did not make such a finding. Instead, it generally found that husband paid his attorney fees "from marital funds." There are no findings regarding how husband spent the $40,000 from the HELOC. Accordingly, the record does not support husband's double-counting theory or establish error in that regard.

## III.

Husband contends that the district court erred by failing to find that wife breached her fiduciary duty to husband. He relies on Minnesota Statutes section 518.58, subd. 1(a) (2014), which provides that, during a dissolution, "each party owes a fiduciary duty to the

6

other for any profit or loss derived by the party, without the consent of the other, from a transaction or from any use by the party of the marital assets," and section 523.21 (2014), which provides that an attorney-in-fact "shall have the interests of the principal utmost in mind." In September 2010, husband and wife granted each other reciprocal powers of attorney for estate-planning purposes. Husband suffered two strokes after receiving a heart transplant in 2011 and was in a coma for approximately three months. During husband's recovery, wife, acting as husband's attorney-in-fact, transferred cash and stock from one Wells Fargo account to another Wells Fargo account. Wife testified that she made the transfer "on the advice of husband's son and husband's Wells Fargo financial advisor, and in keeping with husband's similar instructions on prior occasions." Husband revoked his power of attorney in November 2011. He testified at trial that he asked wife to return the transferred funds "[s]everal times" but that she said to "wait until the divorce is final."

Husband complains that he "is still not sure of the location of these funds or how [wife] used these funds as the purported accounting provided by [wife] was less than complete." *See* Minn. Stat. § 523.21 (providing that an attorney-in-fact is personally liable for her failure to account when such a duty exists under the statute). The district court found that wife provided husband with "copies of all bank account statements in their joint names or in her name alone as well as all credit card statements in their joint names or in her name alone and detailed joint monthly expenses." The district court also found that wife provided documents "identifying all income and expenses, and all accounts opened and all accounts closed, during the period the power of attorney was in

7

effect, as husband requested in an accounting." The district court ultimately found that wife "satisfied her duty to account under the power of attorney."

In addition, the district court found that there was no evidence that wife "violated her fiduciary duties in connection with the transactions with which husband's power of attorney was employed." The district court noted that wife paid all of the parties' living expenses from available income and assets after husband's hospitalization. The district court also noted that "[t]he parties had very high living expenses, including costs related to holding and/or managing their properties in South Carolina, the Netherlands, and Spain." Based on the district court's review of bank-account statements, the court found that "the expenditures made [by wife] appear to be for bona fide living expenses." The court also found that there was no evidence that wife "disposed of any marital assets except in the usual course of business or for the necessities of life."

Husband argues that wife is liable to husband "for the proceeds unilaterally withdrawn from his Wells Fargo brokerage account . . . totaling $461,927 as [husband's] attorney-in-fact," but he does not explain why the district court's findings and conclusion to the contrary are in error. On appeal, error is never presumed: "[i]t must be made to appear affirmatively before there can be reversal" and "the burden of showing error rests upon the one who relies upon it." *Loth v. Loth*, 227 Minn. 387, 392, 35 N.W.2d 542, 546 (1949). Husband has not shown that the district court erred by finding that wife did not violate her fiduciary duty to husband.

Husband also argues that wife was required to transfer the funds back to him after he revoked the power of attorney and that she violated her fiduciary duty by failing to do

8

so, relying on *Younggren v. Younggren*, 556 N.W.2d 228, 232 (Minn. App. 1996). *Younggren* involved two adult children who acted as attorneys-in-fact for their father. *Younggren*, 556 N.W.2d at 230. After the father revoked the power of attorney, the children paid down his outstanding debts with funds from his liquidated assets. *Id.* at 231. The district court concluded that the children "had a legal obligation to return the funds . . . after the power of attorney was revoked." *Id.* at 232. This court affirmed because the debts were "payable, but not due," and therefore paying the debts was "not necessary to protect the interests of [the father]." *Id.*

This case is materially different from *Younggren* for two reasons. First, wife transferred the funds before husband revoked the power of attorney. Second, wife and husband had a marital relationship at the time of the transfer, and the funds, even after the transfer, were still presumptively marital property. *See* Minn. Stat. § 518.003, subd. 3b ("All property acquired by either spouse subsequent to the marriage and before the valuation date is presumed to be marital property regardless of whether title is held individually or by the spouses in a form of co-ownership . . . ."). In fact, husband does not claim that the funds were nonmarital, and the district court awarded each party one-half of the funds remaining in the account into which wife transferred the funds. The circumstances therefore indicate that the funds transferred were marital, and hence that wife had an ownership interest in the funds both before and after the transfer. The children in *Younggren*, lacked a similar interest in the funds at issue there. Once again, husband fails to establish error.

## IV.

Husband contends that the district court erred by failing to find that wife dissipated marital assets in violation of Minn. Stat. § 518.58, subd. 1a (2014).[2] The district court rejected husband's argument that wife dissipated assets from the marital estate, including silver bars, a loan repayment from their daughter, motor vehicles in the Netherlands, money spent on personal training and massages, additional unaccounted-for marital funds, and money spent on college tuition. Husband challenges the district court's determination of this issue.

The relevant statute provides as follows:

> During the pendency of a marriage dissolution, . . . or in contemplation of commencing a marriage dissolution, . . . each party owes a fiduciary duty to the other for any profit or loss derived by the party, without the consent of the other, from a transaction or from any use by the party of the marital assets. If the court finds that a party to a marriage, without consent of the other party, has in contemplation of commencing, or during the pendency of, the current dissolution . . . transferred, encumbered, concealed, or disposed of marital assets except in the usual course of business or for the necessities of life, the court shall compensate the other party by placing both parties in the same position that they would have been in had the transfer, encumbrance, concealment, or disposal not occurred.

Minn. Stat. § 518.58, subd. 1a. The party claiming that the other dissipated assets has the burden of proof. *Id.*

---

[2] Both parties, as well as the district court, use the term "dissipated" when discussing Minn. Stat. § 518.58, subd. 1a, which describes the transfer, encumbrance, concealment, or disposition of marital assets but does not use the term "dissipation." We note the distinction but use "dissipated" in the same manner as the parties and district court to describe conduct under section 518.58, subd. 1a.

Husband's arguments on this issue are not persuasive. He claims that wife "did not produce any documentation evidencing" her sale and use of the parties' silver bars for living expenses. This argument ignores both the fact that husband has the burden of proof to show dissipation and the fact that the district court found that wife "testified credibly that she sold 5 silver bars to pay living expenses." Appellate courts defer to district court credibility determinations. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988). Husband claims that the parties' daughter gave wife funds to repay a $60,000 loan from the parties, but he does not argue that wife spent those funds, let alone that she did so without his consent or not for the necessities of life. He claims that wife sold the parties' motor vehicles in the Netherlands, but he does not argue that he did not consent or that the sale was not in the usual course of business or for the necessities of life. He claims that wife spent marital funds on personal training and massages, but he does not argue that she did so "in contemplation of dissolution."[3] He claims that at least $186,844 of marital funds are unaccounted for, but instead of arguing that wife improperly disposed of the funds, he simply notes that wife controlled them. On this record, we conclude that husband's assertions that funds were under wife's control and were unaccounted for are not sufficient to show that the district court erred by finding that husband did not carry his statutorily imposed burden of showing that wife dissipated the funds in question.

---

[3] Husband claims that wife incurred the fitness expenses when she "started having an intimate relationship" with another person, apparently implying that wife therefore contemplated dissolution when she spent marital funds on personal training. He cites his own testimony as support, but the district court sustained wife's objection to that testimony.

Husband also claims that wife dissipated marital funds to pay for her college tuition. During the dissolution proceeding, wife enrolled in a three-year sonography program at St. Catherine University. The district court rejected husband's argument that wife's tuition payments constitute dissipation under section 518.58, subd. 1a, reasoning that there was no evidence that the payments were made in contemplation of dissolution, that the expenditure was "not unusual at the standard of living that these parties were accustomed to prior to the dissolution," and that wife had testified that "she attends college to assist her in earning income."

In sum, the district court thoroughly addressed each of husband's dissipation claims and concluded that husband failed to meet his burden of proof. Husband fails to establish that the district court erred in its determination of this issue.

## V.

Husband contends that the district court erred by "finding that [wife] had met her burden of proof in establishing dissipation [under section 518.58, subd. 1a,] relating to the parties' use of marital assets for the payment of attorney's fees." He argues that his use of marital funds could not be improper under section 518.58, subd. 1a, because wife not only consented to the use but also facilitated the use by paying some or all of his attorney fees on his behalf with marital funds. *See* Minn. Stat. § 518.58, subd. 1a (referring to the disposal of marital assets "without consent of the other party").

In the amended judgment and decree, the district court found that husband had incurred "approximately $80,000 more" in attorney fees than wife. The district court specifically found that husband "has paid over $150,000 in attorneys' fees from marital

funds (and up to $180,000) while wife has paid between $70,000-$80,000."[4] To account for the difference in attorney-fee expenditures, the district court adjusted the equalizer payment in the property division. The district court stated that a payment from wife to husband of $130,000 "would equalize the property division between the parties," but it reduced wife's payment to $100,000, reasoning that $100,000 "is fair and equitable and takes into account husband's excessive use of marital funds for attorneys' fees."

Even though the district court cited *Baker v. Baker*, a case applying section 518.58, subd. 1a, when explaining its ruling on this issue, it is not clear that the district court treated husband's use of marital funds for attorney fees as an improper disposal under section 518.58. *See* 733 N.W.2d 815 (Minn. App. 2007), *aff'd in part and rev'd in part*, 753 N.W.2d 644, 653-54 (Minn. 2008) (considering whether a party dissipated marital assets under section 518.58, subd. 1a, by paying attorney fees from a marital checking account).

The remedy under section 518.58, subd. 1a, is to "compensate the other party by placing both parties in the same position that they would have been in had the . . . disposal not occurred." Minn. Stat. § 518.58, subd. 1a. The supreme court has indicated that when compensating for the disposal of marital assets for attorney fees under section 518.58, subd. 1a, the district court should take into account both parties' use of marital funds for attorney fees. *See Baker*, 753 N.W.2d at 654 (stating that if, on remand,

---

[4] Despite the range used by the district court to describe wife's attorney-fee expenditures, the district court's findings that husband spent "over $150,000" and "approximately $80,000 more" than wife suggest a more precise finding of $70,000. We use that figure in our analysis.

husband was found to have used marital property to pay his attorney fees in violation of section 518.58, then the district court should compensate wife, "taking into account the extent to which marital assets also have been used to pay her attorney fees").

Under those principles, if the district court intended to equalize the property distribution based on section 518.58, subd. 1a, the district court would have reduced wife's equalization payment by half the difference between the parties' expenditures on attorney fees (i.e., half the difference between husband's $150,000 attorney-fee expenditure and wife's $70,000 attorney-fee expenditure). But the district court did not do so. In fact, the district court appears to have considered and rejected this remedy. The district court explained that "[h]usband has incurred approximately $80,000 more in attorneys' fees than wife. If he was required to repay the marital estate the sum of $80,000 it would result in *at least* $40,000 payable to wife." But instead of reducing the equalizer payment from wife to husband by $40,000, the district court reduced it by $30,000, noting that the result "is fair and equitable and takes into account husband's excessive use of marital funds for attorneys' fees."

We recognize that there may be some merit to husband's argument that his use of marital funds does not violate section 518.58, subd. 1a, because wife consented to the use. *See Baker*, 753 N.W.2d at 654 (remanding for a factual determination regarding whether wife consented to husband's use of marital funds to pay his attorney fees). However, it is not clear to us that the district court's downward adjustment of wife's equalizer payment was, in fact, based on section 518.58, subd. 1a. And for the reason

14

that follows, we are not persuaded that the district court's approach constitutes reversible error.

"Family dissolution remedies . . . rely on the district court's inherent equitable powers." *Holmberg v. Holmberg*, 588 N.W.2d 720, 724 (Minn. 1999). And the legislature has directed the district court to make an "equitable division" of the parties' marital property in a marital-dissolution proceeding. Minn. Stat. § 518.58, subd. 1. "A [district] court has broad discretion in evaluating and dividing property in a marital dissolution and will not be overturned except for abuse of discretion." *Antone*, 645 N.W.2d at 100.

In reducing wife's equalizer payment to husband, the district court noted that husband paid attorney fees "substantially in excess of" the fees that wife paid. The district court explained that the reduction "is fair and equitable and takes into account husband's excessive use of marital funds for attorneys' fees." The district court's references to husband's "excessive" use of marital funds suggests that the court did not find husband's use of marital funds for attorney fees entirely improper, which would have been the case if the court had found a violation of section 518.58, subd. 1a. Instead, the references suggest that the district court only found the "excessive" use improper. We therefore view the district court's reduction of wife's equalizer payment as an attempt to equitably account for husband's "excessive" use of marital funds and to equalize the parties' use of marital funds for their respective attorney fees. *See Holmberg*, 588 N.W.2d at 724. We therefore do not disturb the district court's decision on this issue.

Husband also argues that the record does not support the district court's finding that he spent over $150,000 on attorney fees. He contends that the record evidence regarding his attorney-fees expenditure shows that he spent $120,000 on attorney fees using the parties' credit cards. But husband also testified that he could have spent more than $120,000 and that he paid one of his attorneys an additional $24,000 using the parties' home equity line of credit. Thus, according to husband's own testimony, he spent at least $144,000 in marital funds on his attorney fees. Even though that amount is $6,000 less than the district court's finding, that difference is insignificant given the amount of the equalizer-payment reduction and the value of the marital estate. If the district court had used $144,000 in its calculation, husband's attorney fees would have been $74,000 more than wife's (i.e., $144,000 less $70,000), and a reduction in wife's equalizer payment consistent with the calculation that the district court used (i.e., 37.5% of the difference between the amounts of marital funds each party spent on attorney fees) would be $27,750 instead of $30,000. Because we have concluded that the district court's decision to reduce wife's equalizer payment was not an abuse of discretion and because the alleged error regarding the amount of marital funds husband spent on attorney fees is de minimis, we do not reverse on this ground. *See Grein v. Grein*, 364 N.W.2d 383, 387 (Minn. 1985) (declining to remand and affirming the district court when the district court would undoubtedly reach the same result on remand); *Wibbens v. Wibbens*, 379 N.W.2d 225, 227 (Minn. App. 1985) (refusing to remand for technical, de minimis financial error).

## VI.

Husband contends that the district court erred by "awarding [wife] a disproportionate division of the marital estate." He emphasizes the district court's adjustment of the equalizer payment to account for the parties' use of marital funds for attorney fees and misconstrues the district court's order. As explained in section V. of this opinion, the district court appropriately reduced wife's equalizer payment to husband to account for husband's excessive use of marital funds for his attorney fees.

Husband argues that "[e]quity demands a disproportionate division of the marital estate in [his] favor" because his "significant and longstanding health issues . . . effectively preclude him from obtaining employment." *See*, *e.g.*, *Kaste v. Kaste*, 399 N.W.2d 128, 130 (Minn. App. 1987) (affirming property division that was not mathematically equal where district court made findings on one spouse's "health and financial, education, and occupational, difficulties"), *review denied* (Minn. Mar. 13, 1987). A district court has "broad discretion regarding the division of property," and appellate courts will only overturn a division of property if the district court abused its discretion. *Lee v. Lee*, 775 N.W.2d 631, 637 (Minn. 2009). "[An appellate court] will affirm the [district] court's division of property if it had an acceptable basis in fact and principle even though we might have taken a different approach." *Antone*, 645 N.W.2d at 100. Although husband articulates reasons why the district court could have divided the property differently, he does not establish that its failure to do so constitutes an abuse of discretion. *See Rutten v. Rutten*, 347 N.W.2d 47, 50 (Minn. 1984) (stating that a district

17

court abuses its discretion in dividing property if it resolves the matter in a manner "that is against logic and the facts on record").

**VII.**

By notice of related appeal, wife challenges the district court's finding that the parties' home and property in De Meern, Netherlands, has a fair-market value of $1,105,000. "Fair market value" is defined as "[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction." *Black's Law Dictionary* (10th ed. 2014). Appellate courts will not set aside a district court's determination of an asset's value unless the finding was "clearly erroneous on the record as a whole." *Maurer v. Maurer*, 623 N.W.2d 604, 606 (Minn. 2001) (quotation omitted). The district court's value "need only fall within a reasonable range of figures" because "valuation is necessarily an approximation in many cases." *Id.* (quotations omitted).

The district court explained that the only record evidence regarding the property's value was wife's testimony that she "tried to sell the property but was unable to find a buyer for more than the mortgage value of the property, approximately 850,000 Euros or $1,105,000 USD." The district court further explained that there was no other evidence of the property's value and "no evidence supporting a valuation above $1,105,000 USD."

Wife contends that the De Meern property is worth, "at a minimum, $1,200,000," emphasizing her testimony that she believes the property is worth more than €995,000. But wife also testified that she put the property on the market for €1,100,000, had to reduce the price to €995,000, and only received one offer, which was for €750,000. Wife

18

relies on documents in the record that purportedly show the property's listing price and tax-assessed value.  But the district court did not consider those documents because they are written in Dutch, they were not translated into English, and they do not show whether anyone would pay those amounts for the property.

The district court based its property valuation on the outstanding mortgage and wife's testimony that no buyer had been willing to pay more than that amount.  Because the finding has adequate record support, it is not clearly erroneous.  We therefore do not address husband's argument that, if the district court erred in valuing the De Meern property, the value should be adjusted downward.

**Affirmed.**